HENRY NEWBERRY *against* GERSHOM BULKLEY, HANNAH STOW and HOSEA BULKLEY.

*A.*, on the 19th of *February*, 1808, by an absolute deed, of that date, conveyed a certain piece of land to sundry creditors, to secure the payment

MOTION for a new trial.

This was an action of *disseisin* for five-sixth parts of a certain parcel of land in *Middletown*. The cause was tried before the Superior Court, on the plea of *no wrong or disseisin ;* and the jury returned a verdict in favour of the plaintiff.

The plaintiff claimed title to the demanded premises, by virtue of the levy of an execution.

of their several debts. It was agreed between the grantor and *B.*, one of the creditors, the others not being present, that the grantees should execute a defeasance, by which the deed should become void, on payment of their several debts, within 90 days : The defeasance was not made until the next morning, when it was executed by *B.*, and was afterwards executed by all the grantees ; but was not delivered to the grantor, until the 2d of *May* following : On the 19th of *May*, 1808, *C.*, a creditor of *A.*, attached the land in question, and obtained judgment and execution. In an action of *disseisin* brought by *C.*, claiming title by virtue of the levy of his execution ; it was held, that the grantees of *A.*, were, by the deed, vested with a valid title to the land in question, as mortgagees.

The land was attached at the suit of the plaintiff, as the property of *Gershom Bulkley*, one of the defendants, on the 19th of *May*, 1808. The officer's return of the execution, which issued upon final judgment in the cause, after stating a demand, &c., was as follows, viz. " Whereupon, by direction of *Chauncey Whittelsey*, jun. Esq. attorney to the creditor, I this day levied this execution on six-elevenths of one-sixth of the dwelling-house," &c., " containing six acres, more or less : And the said *Chauncey Whittelsey*, jun. attorney as aforesaid, chose *Samuel Eells*, an appraiser of said property ; and the debtors neglecting and refusing to appoint an appraiser, I applied to *Nehemiah Hubbard*, jun. Esq. next justice of the peace for said county, residing in said *Middletown*, who appointed *Lamberton Cooper* and *Josiah Sage*, appraisers of said property with said *Eells* ; and the said *Eells*, *Cooper* and *Sage*, inhabitants and freeholders of said town of *Middletown*, being duly sworn by said justice *Hubbard*, proceeded to view said property, and after mature deliberation, they appraised and set off to the within named creditor, six-elevenths of one-sixth of the whole of said property, the same being undivided, at the sum of 209 dollars, 4 cents, in part satisfaction of this execution. I then levied this execution on the whole remaining part of said described property ; and the said *Eells*, *Cooper* and *Sage* having viewed the same, did, after mature deliberation, estimate, appraise and set off to the within named creditor, one acre and an half, at the sum of 449 dollars, 78 cents, in full satisfaction of this execution," &c. ; " said land set off last, as aforesaid, being under the incumbrance of one undivided sixth part, which was previously set off on execution."

The certificate of the justice, to whom application was made for the appointment of appraisers, was in these words, viz. " This may certify, that on the application of *Asahel Loomis*, a deputy sheriff for the county aforesaid, I administered the oath provided by law, for appraisers of land taken in execution, to *Lamberton Cooper*, *Samuel Eells* and *Josiah Sage*, they being inhabitants and freeholders of said town of *Middletown*."

Nov. 1812.

NEWBERRY
*v.*
BULKLEY.

On the trial, the plaintiff, for the purpose of shewing his title to the demanded premises, offered in evidence, the execution, together with the officer's return, as above mentioned. The defendants objected to the admission of this evidence, on the ground, that the return was defective and illegal ; but the court overruled the objection, and admitted the evidence.

The defendants, to shew the plaintiff's want of title, proved the following facts, *viz.* That on the 19th of *February*, 1808, *Gershom Bulkley*, one of the defendants, by his deed of that date, absolute on the face of it, and duly recorded, conveyed the demanded premises to *Amos Sage, Oliver Smith, Zebulon Stow, Lucy Johnson* and *Anna Stocking ;* that the deed was not intended as an absolute conveyance of the land, but only as a security for certain debts due from the grantor to the grantees : And as evidence of this fact, the defendants read to the jury, an instrument in writing, executed by all the grantees, bearing the same date with the deed, whereby the grantees covenanted with the grantor, that on payment of their several debts, within ninety days, they would reconvey the land to him, and that his deed to them should be void.

It was also proved, that it was agreed, originally, between the grantor and *Amos Sage*, one of the grantees, the others not being present, that the deed should be given, and the defeasance before mentioned, should be executed, at the same time ; but that the defeasance was not made and completed until the morning of the 20th of *February*, 1808, when it was executed by *Sage*, and that it was, afterwards, executed by the other grantees. The defeasance was delivered to the grantor on the 2d of *May*, 1808.

Upon this state of facts, the court instructed the jury, that the plaintiff, by the levy of his execution, acquired a valid title to the land in question ; and that the deed from *Bulkley* to *Sage* and others, was fraudulent, as against creditors : Whereupon, the defendants moved for a new trial, on the ground of a misdirection ; and also on the ground of the admission of improper evidence ; which motion was reserved for the opinion of the nine Judges.

*N. Smith* and *L. H. Clarke*, in support of the motion.

1. Was the deed from *Bulkley* to *Sage* and others, fraudulent? In the first place, there was no fraudulent intention of the parties. Where there is an agreement, though by parol, that an absolute deed shall be a mortgage, it shall not be deemed fraudulent, unless it be the intention to lock up the property from the reach of creditors. The intention of the parties is always the criterion. Secondly, this transaction was not fraudulent in contemplation of law. This case does not stand on different ground from ordinary cases, where a defeasance is executed. The doctrine of constructive fraud, has, already, been carried far enough; and the court would rather feel themselves bound to abridge the limits to which this principle has been extended, than enlarge them.

If, in the present case, the grantees had refused to execute the defeasance, a court of chancery would permit the grantor to redeem. This could not be allowed, if the transaction had been fraudulent. *Daniels* v. *Alvord*, 2 *Root's Rep.* 196. *Joynes* v. *Stathan*, 3 *Atk. Rep.* 389. The objection that the agreement was by parol, is unfounded. There must always be a reliance upon parol agreements, where a defeasance is to be executed; for the defeasance must be, necessarily, subsequent to the deed. When it is executed, it relates back to the execution of the deed, and becomes part and parcel of the transaction.

2. Is the return of the officer upon the execution, sufficient? Whenever an officer, in his return, enters into all the particulars relating to the levy of an execution on land, and it appears that he proceeded contrary to law, the title of the creditor is not perfected. In the present case, it does not appear, that the appraisers were appointed to appraise the land in question, except, merely, from the return, or certificate of the officer himself. It appears from the certificate of the justice, that the appraisers were sworn by him, but he says nothing respecting the appointment. The fact of their appointment, as well as of their being sworn, ought to appear from the certificate of the justice. But, at most, the appraisers were only appointed to appraise the first parcel of

land levied upon ; and it does not appear, even from the return of the officer, that they were appointed appraisers of the second parcel. Here, then, were two distinct levies, and but one appraisal.

Besides, it appears, that the appraisers set off the land. They might, with the same propriety, have made the levy of the execution. The appraisers did not possess the power of performing either of these acts. This power is vested in the officer alone ; and it must, necessarily, appear from his return, to have been by him exercised.

*Daggett* and *Whittelsey*, contra.

1. It is established beyond controversy, that if *A.* gives a deed to *B.*, absolute on the face of it, as security for debts not specified, it is fraudulent, as against creditors. Does not the present case come within the extent of this principle ? *Cotterell* v. *Purchase, Cas. tem. Talbot*, 63.

2. The return of the officer is substantially good. The most that can be said, is, that it is defective in point of form.

They cited *Shep. Touch.* 64. *Newl. Contr.* 372. *Hungerford* v. *Earle*, 2 *Vern. Rep.* 261. *Christ's Hospital* v. *Budgin*, 2 *Vern. Rep.* 683. *Doe* dem. *Otley* v. *Manning*, 9 *East's Rep.* 59.

BRAINARD, J. (After stating the case.) The question in the present case, is, whether the deed of *Gershom Bulkley*, in connection with the defeasance, is good, as a mortgage, or fraudulent ? If it is valid, the levying creditor is postponed, and will take only the equity of redemption.

In deciding this question, it is necessary to ascertain the true character of this transaction. The idea of a secret trust, I apprehend, never entered the minds of the parties. It does not compare with the case of a trust ; a mere personal confidence, not contemplated as a thing to be enforced, and which the pure principles of justice, never will, and never can enforce. It is true, that the grantor put faith and confidence in the grantees, that that should be done, which would

place the whole transaction in its true point of light. This was reasonably done, and the attaching creditor had a fair view of it. A mere random, unconditional conveyance, without any liquidation or adjustment of the claims to be secured, must always be deemed fraudulent and void, as against creditors. And it is truly said, in the case of *Cotterell* v. *Purchase, Cas. tem. Talbot,* 64., " that they who take a conveyance of an estate as a mortgage, without any defeasance, are guilty of a fraud." But, here, the question is, did not the grantor take a defeasance ? He certainly did, if he took that by which a defeasance could be enforced.

While we zealously discountenance fraud, we must, at the same time, be careful not to sanction it. The best test of the transaction under consideration, is, whether, if *Sage* and the other grantees, after procuring the deed, in the manner, and on the terms stated and proved, had refused to execute the defeasance, would a court of chancery have compelled them to do it ? If so, it follows, conclusively, that the transaction was valid. I apprehend, that a court of chancery would have interfered, and enforced the specific performance ; because, the deed was delivered on the express agreement that a defeasance should be executed. It was an essential part of the consideration ; and, for the grantees to attempt to avoid it, would be a fraud, meriting the reprehension and correction of a court of chancery.

In the case under consideration, the defeasance was executed in good faith, before the plaintiff had any pretension to a claim on the land. That was actually done, in pursuance of an agreement, which, on refusal, a court of chancery would have compelled ; and the act was done at the time, and in the manner, required by the agreement.

But it is objected, that the parties were not all present at the time of the agreement. The maxim, that a subsequent assent is equal to a prior agreement, is perfectly applicable to this case. And besides, *Sage* may, fairly, be considered as the agent of all the grantees. He informed them of the terms on which he received the deed, as security for their debts, and they acquiesced.

In relation to the objection, that the levy of the plaintiff's execution, was irregular, I shall say nothing ; as, on the point which I have briefly discussed, I am of opinion, that the charge was incorrect, and that, therefore, there ought to be a new trial.

All the other Judges concurred.

New trial to be granted.