## SPARROW *against* SMITH.

*A.*, being in embarrassed circumstances, on consultation with *B.*, his brother, who had been sent to see him, by *C.*, his father, but without any authority to bind *C.*, made a deed of land to *C.* for a consideration expressed therein, which was the full value of the land, and put such deed into the hands of *B.* to take to *C.*, and propose to him to pay or secure the consideration money, and accept the deed- *C.*, a man of abundant property, assented to the proposal, received the deed, and, in two or three days, complied with the terms. Held, that such deed was an escrow in the hands of *B.*, and did not take effect as a deed, until the actual delivery of it to *C.*

In such case, the circumstance that the consideration money was not immediately paid or secured, did not render the deed void, for want of consideration.

This was an action of ejectment ; tried at *New-London, January* term, 1822, before *Hosmer,* Ch. J. The plaintiff claimed

title to the demanded premises, by the levy of an execution against the defendant, on the 3rd of *February*, 1821. The defendant claimed, that the title was, at that time, in *Simeon Smith*, his father, by an absolute deed from him, the defendant, dated the 11th of *January*, 1820, with warranty, and for the consideration actually paid of 1500 dollars. The plaintiff contended, that this deed was fraudulent, on the ground that no consideration was paid by the grantee, at the time of its execution and delivery.

The defendant offered evidence to prove, and claimed that he had proved, that his circumstances had become embarrassed; that on consultation with *Rufus Smith*, at *Lyme*, who went to see the defendant at his father's request, but without any authority to bind his father, he made the deed in question, for the consideration expressed of 1500 dollars, which was the full value of the premises, and procured it to be recorded; that he then put it into the possession of *Rufus Smith*, to take it with him to *Groton*, where his father resided, with direction to apply to his father, and propose to him to pay and secure 1500 dollars, and accept the deed, his father being then his creditor in the sum of 199 dollars, 50 cents, and his indorser on notes at the *New-London* and *Westerly* banks, amounting to 550 dollars; that *Rufus* accordingly took the deed to *Groton*, and communicated the proposition to the defendant's father, a man of abundant property, who thereupon assented to the proposed arrangement, and received the deed; and that in two or three days afterwards, he came over to *Lyme*, and delivered to the defendant his note for 199 dollars, 50 cents, and executed to him a bond conditioned to take up said notes at the *New-London* and *Westerly* banks, and gave two promissory notes, one for 600 dollars, the other for 161 dollars, which, after allowing a small account due to the defendant, made up 1500 dollars, the amount expressed as the consideration of the deed.

The plaintiff contended, that the deed was put into the hands of *Rufus* to be delivered to the grantee, and so was the deed of the defendant from the date thereof; and if not, from the time of its delivery to the grantee; and that, in either view, it was void.

The defendant insisted, that the deed was an escrow, until the actual delivery of it to the grantee; that by his acceptance of it, with full information of the terms on which it was to be received, to which he assented, he was bound to pay the consideration, which he actually did pay, or to secure it, in a short time; and that the deed was, therefore, valid.

The Chief Justice instructed the jury, that the deed was not the deed of the defendant, until the actual acceptance thereof by the grantee ; that to render the deed valid, it must have been made for the value of the property granted, and *bona fide ;* and that the facts claimed by the defendant being proved, the deed was not invalidated because the actual payment and securing of the consideration was necessarily deferred for a few days. The jury returned a verdict for the defendant ; and the plaintiff moved for a new trial, on the ground of a mis-direction.

*New-London,*
*July,*
1823.

Sparrow
*v.*
Smith.

*Isham* (with whom was *M'Curdy*) in support of the motion, contended, 1. That the deed was fraudulent, and on that ground was void. The effect of it was, to lock up the property of the defendant, from his creditors. At least, it defeated or delayed them, from the time of its execution and recording until it was received by the grantee. This was manifestly the *intention* of the grantor. Why, else, did he execute the deed, and procure it to be recorded, without consulting the grantee, and without his knowledge? There were other prominent badges of fraud. The persons concerned in the transaction, were a father and his sons. The grantor, in failing circumstances, was giving a preference to his father. The judge should have instructed the jury, that these circumstances furnished strong, if not conclusive, evidence of fraud, which could be rebutted only by clear proof of a just debt, and a *bona fide* conveyance. But the charge merely stated, that the deed must have been made for the value of the property, and *bona fide.*

2. That the deed was executed and delivered without any consideration, and so was void. First, the deed was delivered to the grantee, through his agent, *Rufus Smith,* at the time of its execution. To constitute a delivery, no particular form or ceremony is necessary ; it being sufficient if the grantor testifies his intention, by action, or by word, to put it into possession of the other party. *Phill. Evid.* 361. Secondly, the deed was delivered, by the grantor, *as his deed,* to a third person, to be delivered to the grantee, on some future event or contingency. If a grantor deliver a writing as his deed, or as an escrow, to a third person, to be delivered by him to the grantee, on some future event or contingency, it is the grantor's deed *presently.* *Wheelright* v. *Wheelwright,* 2 *Mass. Rep.* 447. *Hatch* & ux. v. *Hatch* & al. 9 *Mass. Rep.* 307. *Hallack* v. *Bush,* 2 *Root* 26. Thirdly, if there was no delivery of the deed until it was actu-

ally put into the hands of the grantee, yet when it was so taken and accepted, it became the deed of the grantor from the time of the original delivery to *Rufus Smith.* *Maynard* v. *Maynard* & al. 10 *Mass. Rep.* 456. *Fairbanks,* admr. v. *Metcalf,* 8 *Mass. Rep.* 230. 238. Lastly, some days elapsed after the deed was actually received and accepted by the grantee, before any thing was paid or secured. In no point of view, did a consideration pass, at the time of the delivery; which was indispensibly necessary, to render the deed a valid one.

*Gurley* and *Waite,* contra, were stopped by the Court.

HOSMER, Ch. J. The question of fraud, in this case, was duly submitted to the jury; and from their verdict, it must be inferred, that the transaction between the parties, was not fraudulent. This, of consequence, leaves two points, for the determination of the court. 1. Did the deed in question take effect, from the time when it was put into the hands of the defendant's brother, or from the delivery of it to the grantee. And 2. if the latter be the fact, was it legally valid?

Assuming the facts stated in the motion, as we certainly ought to do, unless we invert the legal presumption, that the jury exercised their jurisdiction soundly, the case is briefly this. Having become embarrassed in his circumstances, on consultation with his brother, who had been sent to see him, by *Simeon Smith,* his father, but without any authority to bind him, the defendant made the deed in question, for the expressed consideration of 1500 dollars, the full value of the premises; and put the same into the hands of his brother, to take with him to *Groton,* his father's place of residence, and *propose to him,* to pay the above consideration, and accept the said deed. The defendant's brother took the deed to *Groton,* and communicated the above proposition to his father, a man of abundant property, who thereupon assented to the said proposal, and received the deed; and in two or three days, went to *Lyme,* and paid and secured the consideration money, in the manner proposed.

The defendant's brother was his agent, and was not to deliver the deed, unless his father assented to the proposition, which he was empowered to make. It therefore results, that the deed was an escrow, and, of consequence, was of no validity, until the actual delivery of it to *Simeon Smith.* 2 *Bla. Comm.* 307. *Shep. Touch.* 58. *Coe* & al. v. *Turner* & al. ante, 86. It then

commenced its existence *as a deed ;* to originate which, a delivery is indispensibly essential.

This remark brings me to the second enquiry, whether the deed, on the facts stated, was a valid conveyance. What possible objection can be made ? As the delivery of the deed to a man of unquestionable property, was clearly *bona fide,* and has been so found by the jury, it is urged, as the only exception, that payment or written security, were not instantaneously made. Independent of the question of fraud, towards the proof of which the above delay may be insisted on, as a circumstance of more or less weight, the law does not require immediate payment, or immediate security. *Newbury* v. *Bulkley,* 5 *Day* 384. No man of prudence, will long procrastinate, in either of the above particulars, lest it should be seized on, as evidence of a transfer *mala fide ;* but after the repeated determinations on the subject, there exists no doubt on the abstract law question, whether the deed, by reason of the non-payment, is inefficient. The consideration is recoverable, in an action at law, in a case under the above circumstances ; and to this effect, are the determinations in *Clark* v. *Brown* & ux. 1 *Root,* 77. *Hannah* v. *Wadsworth,* 1 *Root,* 458. *Cone* v. *Tracy,* 1 *Root,* 479. *Velie* v. *Myers,* 14 *Johns. Rep.* 165. Surely, when there is no fraud, and no law prohibiting it, a man may do what he will with his own ; and if he elect to entrust a man of property, with the conveyance of land, and not instantaneously to exact the consideration, or demand a promissory note, he is at liberty to do it. Oral proof of the contract, may be more difficult to make, and is less enduring, than a written security ; but, it is in point of law, of equal grade with a note payable to order ; and the contract is equally valid, on which ever ground the vendor has placed his reliance.

The other Judges were of the same opinion.

New trial not to be granted.