*Hartford,*
June, 1840.

North
*v.*
Belden.

## NORTH *against* BELDEN and another :

### IN ERROR.

To render a mortgage valid, as against the creditors of the mortgagor, the real nature of the transaction, so far as it can be disclosed, must appear upon the record, with reasonable certainty, or at least the record must point out a track, by pursuing which the enquirer may ascertain it.

Therefore, where the condition of a mortgage deed purported to secure the payment of an absolute note for 500 dollars, given by the mortgagor to the mortgagee ; and such note was in fact given to secure the mortgagee for indorsing and becoming responsible for the mortgagor, from time to time, for a sum not exceeding 500 dollars, in pursuance of an agreement between them that he should so do, and the mortgagee did so indorse and become responsible to that amount, which, in consequence thereof, he was obliged to pay ; it was held, that this mortgage was not valid as against the claim of a subsequent mortgagee.

THIS was a bill of foreclosure. On the 3rd of *October* 1828, the defendant *Belden* mortgaged a piece of land to the plaintiff, to secure the payment of a promissory note for 200 dollars and interest. On the 11th of *March* 1836, *Belden* mortgaged another piece of land to the plaintiff, the condition of the mortgage deed being as follows: " Whereas the said *Belden* is indebted to said *North* in the sum of 500 dollars, by note, payable on demand, and dated the 8th of *March* 1836 ; now if said note is not paid within two years from date, this deed is to remain in force, but otherwise, if paid within three years." On the 14th of *April*, 1837, *Belden* mortgaged the same premises to *Peck*, by a deed conditioned that *Belden* should save *Peck* harmless from two certain notes indorsed by *Peck* for *Belden*, one for the sum of 113 dollars, 89 cents, dated *December* 1st, 1836, and the other for the sum of 200 dollars, dated *October* 31st, 1836, payable on demand with interest. These notes were endorsed by *Peck* for the sole accommodation and benefit of *Belden ;* who failed to pay them ; and *Peck* was compelled to pay, and did pay them. On *Belden's* note to the plaintiff for 200 dollars payments were made, so that there remained due on it, on the 5th of *May* 1837, 86 dollars, 11 cents. The note for 500 dollars was made and delivered to the plaintiff to secure him for endorsing or otherwise becoming responsible for

*Belden* for a sum not exceeding 500 dollars, in pursuance of an agreement between them, that the plaintiff would assume such responsibility from time to time, as should be requested by *Belden.* Between the 11th of *March* 1836 and the 5th of *May* 1837, the plaintiff endorsed sundry notes and drafts for *Belden,* on his request, amounting in the whole to 505 dollars, all of which were negotiated away by *Belden,* and were outstanding, at the time last-mentioned. *Belden* afterwards failed ; and the plaintiff was compelled to pay, and did pay, the full amount of the notes and drafts so indorsed by him.

The court decreed in favour of the plaintiff with respect to the balance due on the note for 200 dollars ; but with respect to the note for 500 dollars, his claim was postponed to that of *Peck,* who sought relief by a cross-bill. The plaintiff thereupon, by motion in error, brought the record before this court, for revision.

*W. W. Ellsworth,* for the plaintiff, contended, That the mortgage was a valid security for both the notes described in it. The plaintiff has the legal title to the premises, not only conditionally, by the terms of the mortgage, but absolutely, in consequence of the breach of the condition. *Belden,* the mortgagor, clearly cannot resist the plaintiff's claim. *Peck,* the subsequent mortgagee, stands on no better ground, unless it is by reason of our recording statute. This statute was designed only to enable third persons to see *to what extent* real estate is encumbered, so that credit should not be given, where there was no property. This, let it be borne in mind, is the single purpose of the statute. To apply it in any other case, is to pervert it ; to make it an instrument of injustice, rather than of justice.

There are two principles growing out of the application of this statute. First, its design is to give information, in the case of mortgages, of the full extent of the incumbrance, so that third persons shall not give credit, when there is in reality no property. If the world can learn from the recorded deed, the greatest extent of an existing incumbrance, the statute is satisfied : notice of the greater includes notice of the less. The other principle is, that if the statute is resorted to, with a fraudulent design, the record is void ; and hence

there is no record ; and so the statute is not complied with at all. If, then, the notice is broad enough, and is not made too broad with a fraudulent design, the statute cannot apply ; for it was not made for any such case. Here, the notice is not too broad, with any fraudulent intent. Hence the notice stands for the true debt, and as it is as broad as the whole debt, the first principle does not apply. Now, it is certain, in this case, that *Peck* has lost nothing for the want of notice. He was not deceived ; he did not give credit to his injury ; he saw these two notes in the condition of the deed. Why should he complain? The statute was not made for his case ; and it is unjust to suffer him to use it.

The counsel for *Peck,* in the court below, rested upon a third principle, *viz.* that this statute requires the record to show the *exact state* of the incumbrance. There is such a general principle ; but it is only true in one sense, *i. e.* that an incumbrance shall not, as to third persons, be taken to be *greater* than the record ; but not that it may not be less, (except in the case of a vitiating fraud) or conditional. Notice of the whole sum is enough, *as notice,* though the debt be less or contingent. In the case of *Weeden* v. *Hawes* & al., 10 *Conn. Rep.* 50, it is held, that if the incumbrance appears too large, it does no injury, unless there was a vitiating fraud. So if one take a mortgage of land, and take a further private security of stock, which he is first to apply to extinguish the debt, here the true extent of the incumbrance on the land does not appear, and yet it is a good mortgage debt. So, if one endorse for a man, but after others, and this is not noticed in the mortgage taken for security, is this void? Where will this new principle lead, if every material consideration touching the incumbrance must appear? *Shirras* & al. v. *Caig* & al. 7 *Cranch,* 34.

But the deed in question speaks the exact truth. These notes were given upon an adequate consideration, in the regular and according to the common course of business. *Belden* promised to pay this money. The note speaks just what it ought to speak. The deed gives reasonable notice. It declares that this land is held only as security ; and the extent of that security may be, and should be, enquired after.

In *Sanford* & al. v. *Wheeler,* 13 *Conn. Rep.* 165, the court decided two points ; first, that a surety should not, in equity,

withhold the property assigned to the creditor himself. Secondly, that the claim of a surety did not prove against the creditor assignee, a debt. What the judge says about the necessity of the record giving full notice, is not any part of the two points decided. Equity forbade a different decision; but does equity, in this case, forbid the plaintiff to hold against *Peck ?* The case sustains a deed, giving false information honestly, for *all that was due;* which goes as far as the plaintiff's claim in the present case.

*Hartford,*
June, 1840.

North
*v.*
Belden.

That a mortgage to secure future responsibilities, is valid, is at present well settled. The *United States* v. *Hooe* & al. 3 *Cranch* 73. 89. *Shirras* & al. v. *Caig* & al. 7 *Cranch* 34. 50. *Brinkerhoff* v. *Marvin,* 5 *Johns. Ch. Rep.* 326. *Hubbard* v. *Savage,* 8 *Conn. Rep.* 215. *Crane* v. *Deming* & al. 7 *Conn. Rep.* 387.

*Hungerford* and *Cone,* for the defendant *Peck,* contended, 1. That the mortgage deed must give reasonable notice of the nature and object of it. *Stoughton* v. *Pasco,* 5 *Conn. Rep.* 442. *Pettibone* v. *Griswold,* 4 *Conn. Rep.* 158. *Shepard* v. *Shepard,* 6 *Conn. Rep.* 39. *Crane* v. *Deming,* 7 *Conn. Rep.* 394. *Hubbard* v. *Savage,* 8 *Conn. Rep.* 215. *Booth* v. *Barnum,* 9 *Conn. Rep.* 286. *Sanford* v. *Wheeler,* 13 *Conn. Rep.* 165.

2. That in this case, the mortgage deed does not give such notice, but misleads the public, in the same manner as an absolute deed, intended as a mortgage, would do. The mortgage describes a debt as being due from *Belden* to *North,* without giving any intimation of the nature of the claim. In the first place, there was no such debt, at the time the mortgage was given. Secondly, the case stands upon no better ground than if the facts were reversed, and the condition were to secure against future liabilities, and then an absolute debt attempted to be covered by it. Thirdly, the case stands upon entirely different ground from the case of a mortgage to secure future advancements, when they are properly described in the condition. In that case, the nature and object of the mortgage would appear upon the record.

3. That the case of *Sanford* v. *Wheeler* is directly in point, and decides the whole case. First, the question in part, there was, whether the whole deed was void ; and the court held,

that it was not, inasmuch as there was no actual fraud, and in respect to one part of the debt, the nature and character of it was properly described. Secondly, the very ground of the claim on the part of counsel was, and the court has proceeded entirely upon that ground, that the nature of the debt was *mis-described,* and that it did not, and could not, cover these future endorsements.

WILLIAMS, Ch. J. A variety of facts are stated in the pleadings, which are unimportant in considering the question upon which the case was ultimately decided by the court. That question was, which of the two mortgages, *North's* or *Peck's,* should take priority. The plaintiff, *North,* had two mortgages, to secure two different debts. As to one of them there was no doubt : the other was to secure a note of 500 dollars. *Peck,* having a subsequent mortgage upon the same property, claimed a preference, because *North's* deed did not disclose the real nature of the transaction between him and *Belden.* This note for 500 dollars was given to *North,* at the time it bore date, to secure him for endorsing and becoming responsible for *Belden,* for a sum not exceeding 500 dollars, which *North* agreed to do from time to time, as *Belden* should request. And since said deed was executed, *North* has, from time to time, endorsed and become responsible for *Belden,* to that amount; and has since paid the same; so that there is due to him on said note the full amount. The court below, notwithstanding, held, that upon this mortgage, *North* must be postponed to *Peck,* the second mortgagee ; and to review that decision, this motion was made.

It has ever been the policy of our law, that the title to real estate should appear upon record, that it might be easily and accurately traced. This policy has added greatly to the security of our land titles, and has prevented much litigation, which would otherwise have arisen. And our courts have ever considered it their duty to give such a construction to our statutes as will continue this salutary protection. It is true, there has been some diversity of opinion as to the precise extent of this doctrine ; and cases will sometimes arise, where there may be a doubt as to its application. One principle seems to be definitely settled, that the real nature of the transaction, so far as it can be disclosed, must appear upon the

record, with reasonable certainty; and if the deed does not actually give notice of any condition or other circumstance, which might be important, it should at least point out a track, which the enquirer may pursue to obtain it. *Stoughton* v. *Pasco,* 5 *Conn. Rep* 442. *Shepard* v. *Shepard,* 6 *Conn. Rep.* 38. Thus, it has been considered as settled, long since, that if an absolute deed is given, with intent to secure a debt, such deed would be void as it respects *bona fide* creditors, as it does not disclose the real nature of the transaction. It places the parties in a false position as it respects the public. It holds out the grantee as the real owner, when in fact the grantor is, or may be, the owner. It tends to lull the creditors of both parties (as the case may be,) into false security, and to conceal from them the real condition of their debtors.

In the laws of *New-York,* the same principle is recognized. *Dey* v. *Dunham,* 2 *Johns. Ch. Rep.* 182. *James* v. *Johnson* & al. 6 *Johns. Ch. Rep.* 417. And although the terms of the statute of that state may vary from ours, the same object is kept in view. In this case, had the note given by *Belden* to *North,* been a conditional one, and the security been an absolute deed, there would have been no question as to the result. How, then, is the case altered, by the parties going one step further back? The real character of the transaction is no more manifest in the one case than in the other. The public are subjected to the same delusion; the subject is not presented in its true light. The grantee is no more the real owner of the property, in the one case than in the other. Why then shall the deed be holden invalid, in the one case, and not in the other? The note and deed have indeed but one object, security for future endorsements; and if the deed, which does not disclose the real state of facts, is void, how is the case altered in principle, if neither the note nor deed disclose that object? The record neither discloses the real state of the transaction, nor does it give any clue to it.

It is said you may enquire of the parties. But the mode taken, by its very nature, tends to shut up the avenue to enquiry. Enquiry of the parties would imply an impeachment of their integrity. It is, in effect, asking whether they have, in an important instrument, told the truth. This is an enquiry which the law would hardly impose upon a man; much less can a party, who has placed himself in this situation,

complain that such an enquiry has not been made of him.

It is said again, that the plaintiff claims no more than the record shows he was entitled to. Whether in fact he was entitled to that sum, when *Peck* took his mortgage, we have not particularly examined ; but if the endorsements were then made, we presume the plaintiff had not then paid the notes, and that it was not then known whether he would ever be called upon to do it. Of course, his claim upon the property was of an entirely different character, from that which the record imports.

Again, if this transaction is valid, every similar one must be. Consequently, a person may convey all his estate to a friend, who shall promise, *bona fide*, to endorse for him ; and those endorsements may fluctuate from time to time, in such a manner that no one can tell the state of the property, except as the parties may choose to disclose it ; and thus the real state of the title, instead of appearing upon the record, could only be found in the memory of the parties.

It is said, that when the real transaction is fully disclosed, by putting the actual debt upon the record, the state of the incumbrance, cannot then long be known, as the debt may be reduced, by payments. This is a necessary incident, or at least one in the ordinary course of business, and cannot affect a record originally good, as there is no law directing such payments to be recorded. The party has done all that he was required to do. He disclosed fully the nature of the original transaction ; thus leaving it open for the enquiry which prudent men would naturally make, whether any payments had been made, or not.

But it is not necessary to go much at large into this case, because we consider it settled, by the case of *Sanford* & al. v. *Wheeler*, 13 *Conn. Rep.* 165. There, a note was taken for liabilities of the payee, for which he might never be called upon ; and this note, with another, was secured in one mortgage deed ; and that deed was holden void as to creditors, so far as respects this note. Such a note, then, having been held to be void, in that case, if an absolute deed, given merely as security, is also void, there seems to be no question left in this case.

But the case of *Weeden* v. *Hawes* & al. 10 *Conn. Rep.* 50. is claimed to be an authority for the plaintiff. In that case,

as well as in *Sanford* v. *Wheeler*, this court held, that where there was no actual fraud, a deed would not, in a court of equity, be treated as wholly void, although some notes were attempted to be secured by it, which would be legally void as regards creditors. But these cases differ from this, in an important particular. The deed purports to be what in fact it was intended for, a security for these debts. The real nature of the transaction is spread upon the record, leaving the character of the several notes to be enquired into. But here the note, being an absolute note, and the deed given to secure that note, being absolute, there is nothing to lead to enquiry or to suspicion. If in *Weeden* v. *Hawes*, the deed had been an absolute one, and had been holden good as to one of the notes, it might have been an authority for the plaintiff. As it is, we do not think that it can affect this case. And we are of opinion, that there is no error in the judgment rendered by the superior court.

*In this opinion the other Judges concurred.*

Judgment affirmed.