Ives v. Stone.

---

HOADLEY B. IVES vs. WILLIAM W. STONE AND OTHERS.

A deed absolute on its face, but with a separate defeasance, making it a mortgage, which is recorded without the defeasance, is not valid against an attaching creditor of the grantor.

It is not a question of fraud in the particular instance, nor of due diligence, nor of the attaching creditor having been misled or deceived. Under our registry law it is necessary that the defeasance of a mortgage should appear on the public records.

Where, instead of an ordinary defeasance, constituting a condition of the deed, there is an agreement of the grantee to re-convey on the payment of the mortgage debt within a certain time, making the conveyance an equitable mortgage, the same rule applies.

[Argued December 11th, 1883—decided February 8th, 1884.]

Ives v. Stone.

SUIT for the foreclosure of a mortgage; brought to the City Court of the city of New Haven.

The complaint alleged that Sarah C. Stone, one of the respondents, was indebted to the plaintiff by sundry notes described, and that on the 5th day of April, 1880, she conveyed to him certain real estate in the city of New Haven, by an absolute deed, which was on the same day put upon record; and that on the same day the plaintiff executed and delivered to her the following agreement:—

" This agreement made and executed this 5th day of April, 1880, by Hoadley B. Ives, of New Haven, in the state of Connecticut, witnesseth:—That whereas Sarah C. Stone did, on the 27th day of December, 1878, deliver to me her promissory note for the sum of six thousand dollars, dated December 27th, 1878, and payable to my order on demand; and did on the 17th day of April, 1879, deliver to me her promissory note for the sum of seven hundred dollars, dated April 17th, 1879, and payable to my order on or before the 9th day of May, 1879; and has this fifth day of April, 1880, delivered to me her promissory note for the sum of thirty-three hundred dollars, dated April 5th, 1880, and payable to my order on or before the 1st day of January, 1881; said three notes being given by the said Sarah C. Stone to me for money which I have advanced to her for her own personal benefit to her separate estate; and whereas the said Sarah C. Stone has executed and delivered to me a deed dated April 5th, 1880, conveying to me certain real estate which was set to her in the distribution of the estate of her father, John A. Blake, late of said New Haven, deceased:— Now therefore, in consideration thereof, I do hereby covenant and agree to re-convey to said Sarah C. Stone, by quitclaim deed, the property conveyed to me by her as aforesaid, upon the payment to me by her on or before the 1st day of January, 1881, of the sum of ten thousand dollars, and the interest, if any, that may be due on said sum, and any assessments, taxes and expenses that may have been paid by me, or that may be assessed to me and not then paid; and I agree to make a rebate of the interest

upon any part of the said sum of ten thousand dollars that may be paid to me by said Sarah C. Stone prior to the first day of January, 1881. And I further agree that said Sarah C. Stone shall have the use and enjoyment of the real estate and property conveyed by said deed, and may occupy or rent said premises to other parties. In witness whereof I have hereunto set my hand and seal this 5th day of April, 1880.                                        H. B. Ives. [Seal.] "

The complaint then alleged that the time limited by the agreement for Mrs. Stone to make the payment on which the property was to be re-conveyed, had expired and the payment had not been made; and that on the 13th day of March, 1883, Rubenia McGilvray had attached a portion of the property in a suit upon a note of the said Sarah C. Stone for five hundred dollars, dated May 30th, 1881. The complaint prayed for a foreclosure against McGilvray and other parties interested.

McGilvray demurred to the complaint, on the ground that her attachment was a first lien on the property attached. The court overruled the demurrer and passed a decree of foreclosure against her. She appealed to the Superior Court and that court reserved the case for the advice of this court.

*W. L. Bennett*, for the appellant.

1. The policy of our law in regard to the registry system is so well established that it does not admit of question. From the early case of *Pettibone* v. *Griswold* to the recent one of *Salisbury Savings Society* v. *Cutting*, this court has never lost an opportunity of declaring and enforcing the rule that the real state of a title shall appear of record; that the record shall give notice of incumbrances, and shall disclose, with as much certainty as the nature of the case will admit of, the real state of the incumbrance upon the property. The reason for the rule has been as frequently stated. "Real estate should be registered for the benefit, not of the parties, but of creditors and all others interested." "It is the object of this law to prevent fraud, and give security

and stability to title." *Pettibone* v. *Griswold*, 4 Conn., 162, *Stoughton* v. *Pasco*, 5 id., 442; *Shepard* v. *Shepard*, 6 id., 39; *Crane* v. *Deming*, 7 id., 394; *Hubbard* v. *Savage*, 8 id., 219; *Booth* v. *Barnum*, 9 id., 286; *Prince* v. *Case*, 10 id., 381; *Sanford* v. *Wheeler*, 13 id., 165; *North* v. *Belden*, id., 376; *Hart* v. *Chalker*, 14 id., 77; *Rood* v. *Welch*, 28 id., 161; *Bramhall* v. *Flood*, 41 id., 70; *Herman* v. *Deming*, 44 id., 124; *Stearns* v. *Porter*, 46 id., 313; *Salisbury Savings Society* v. *Cutting*, 50 id., 113. If in any one of these cases we take the deed and strike out the condition entirely, so that nothing remains to give notice of it or describe the incumbrance, we have the case before the court. Has the deed, invalid before, been improved by the operation, and have the objections to it been removed? Does the examining creditor now find the true state of the title on the record? Has he notice, which he had not before, of the real state of the incumbrance? Does this method of mortgaging afford less chance for fraud and concealment? It must be evident that the only change in the deed is for the worse and not the better. The knowledge that any equity at all remains in the grantor, is now denied the creditor. The truth is, that the transaction now before the court presents what must be under our law the typical case of infirmity. It violates the rule in all points, and not in one only, and therefore, as we might expect, this court more than once has stated this case as one concerning which there could be no question. *North* v. *Belden* and *Ayres* v. *Husted*, above cited.

2. The authority of decisions in other states must depend upon the similarity of their recording systems to ours, and the view which the courts have taken of the spirit and intention of recording acts. In Pennsylvania and North Carolina the statute requires mortgages and defeasible deeds of all kinds to be recorded, their statutes going no further than our own in providing for the record of deeds. In both these states it has been repeatedly held that an absolute deed given as security and recorded without the defeasance is void, not because the statutes in terms require the defeasance to be recorded, but because it is the intention

that secret trusts and incumbrances shall not exist. The reasoning of the cases is in the same line, almost in the same words, as in the Connecticut decisions. *Friedley* v. *Hamilton*, 17 Serg. & R., 70; *Jacques* v. *Weeks*, 7 Watts, 261; *Corpman* v. *Baccastow*, 84 Penn. St., 363; *Gregory* v. *Perkins*, 4 Dev., 50; *Halcombe* v. *Ray*, 1 Ired. Law, 340; *Gulley*, v. *Macy*, 84 N. Car., 434. In seven of our sister states the policy of the Connecticut decisions has been adopted by statute, requiring the defeasance to be recorded with the mortgage. In eleven states the absolute convey-ance is not defeated as to third persons unless the defeas-ance is also recorded. 1 Jones on Mortg., §§ 480 to 526; 2 Washb. R. Prop., 61; 4 Kent Com., 141. In the court below the plaintiff cited *Clemons* v. *Elder*, 9 Iowa, 273; *De Wolf* v. *Strader*, 26 Ill., 231; *Young* v. *Thomson*, 2 Kan., 83; *Harrison* v. *Phillips Academy*, 12 Mass., 456; *Moors* v. *Albro*, 129 id., 9; *Gibson* v. *Seymour*, 4 Verm., 518; *Sey-mour* v. *Darrow*, 31 id., 122. Concerning the first three little need be said. They are authority for nothing, save that the registry systems in those states and the policy of their courts in regard to them, differ from our own. The same remark is true of the Massachusetts cases. By statute the deed is there made good as an absolute conveyance against everyone. Compare also the reasoning in *Harrison* v. *Phillips Academy*, 12 Mass., 456, with that in *Jacques* v. *Weeks*, 7 Watts., 261. The two cases in Vermont stand on a different footing. That court without much consideration of the effect upon its recording system, early decided, in the first case, that an absolute deed given as security is good as against creditors of the grantor. Having thus decided, we find the court in the later case holding that a mortgage conditioned for the payment of " all the notes and agreements I now owe or have with him," is good, and they say, " all that is now required is that the extent of the mortgage should be described in general terms ' as all I now owe or may hereafter owe the mortgagee.'" Of course this is not Connecticut law. Their conclusion is entirely inadmissible under our law. It is impossible, logically, to

stand by our decisions and at the same time follow *Gibson* v. *Seymour*. Judge POLAND dissented from the decision, and his opinion is an excellent statement of the Connecticut law and policy in regard to the registry system.

*J. Twiss*, for the appellee.

1. The defendant claims that the plaintiff's deed is void as against her, because his agreement with Mrs. Stone is not recorded. The Connecticut cases cited by her counsel refer to mortgages in which the condition is expressed in the deed, and the question is whether the condition describes the debt secured with sufficient clearness. They decide that in case of ordinary mortgages persons examining the records may presume that the debt thereby secured is described with reasonable certainty, but they vary as to what that degree of accuracy shall be. This record presents a very different issue. The cases, however, of *North* v. *Belden*, 13 Conn., 376, and *Ayres* v. *Husted*, 15 id., 513, need to be noticed more in detail, because of certain dicta used by the judges in deciding them. The issue in these cases is very different from the one presented by this record. Judge WILLIAMS, in *North* v. *Belden*, seems to refer, as authority for his dicta, to the New York cases of *Dey* v. *Dunham*, 2 Johns. Ch., 182, and *James* v. *Johnson*, 6 id., 417. Those cases are so decided because of the express provisions of a statute in that state which requires a defeasance to be recorded. And Judge STORRS, in *Ayres* v. *Husted*, seems to have followed Judge WILLIAMS in *North* v. *Belden*. The cases hereafter cited show that such is not the "conceded law" either in this or other states. *Van Buren* v. *Olmstead*, 5 Paige, 8.

2. The record finds that the plaintiff parted with his money in good faith; that the amount loaned exceeds the value of the property; that Miss McGilvray gave credit to the Stones, without security, more than a year after the date of the deed to the plaintiff and the recording of it; that her attachment was not made until March 13th, 1883; that in August, 1882, the plaintiff took possession of the property, so far as he could, and has since received the rents there-

from ; and that the time named in the agreement, in which to repay the money, expired January 1st, 1881. She therefore did not make her loan on the credit of this property, nor was she misled to her injury by the land records, for they gave notice that this property belonged to the plaintiff. If she had reason to believe that the plaintiff's deed was in effect a mortgage, then she is guilty of laches for not inquiring of him ; if not, then there is no constructive fraud as against her, for she is not injured but benefited by the discovery. Judge PARKER, in *Clemons* v. *Elder*, 9 Iowa, 274, says :—" Why is this deed void ? Because, when the whole transaction is developed, they are given an opportunity to redeem property which apparently was vested absolutely in the grantee." Miss McGilvray is seeking to get security not contemplated by her when she made the loan, at the expense of the plaintiff. She paid no consideration for it, while the plaintiff did, and the equities are therefore in his favor, and to this end a court of equity will construe the law liberally rather than strictly. She must first do equity. *Sanford* v. *Wheeler*, 13 Conn., 165, 168 ; *Mead's Appeal from Probate*, 46 id., 432 ; *Smith* v. *Murphy*, 58 Ala., 630.

3. The plaintiff's deed is not void, as against the defendant, either because of the statute against fraudulent conveyances, or of the insolvent laws, or of our registry acts and decisions relating thereto. The statute against fraudulent conveyances does not invalidate this deed, because no fraud is found, and the law will not imply fraud. *Benton* v. *Jones*, 8 Conn., 186, 189. Nor can its validity be attacked, in this way, under the insolvent laws. *Mead's Appeal from Probate*, 46 Conn., 417, 430. Nor do our registry laws require this agreement to be recorded in order to protect the plaintiff. The absolute deed to Ives being on record and the plaintiff in possession, it was sufficient notice to put the defendant on inquiry, and she is not, therefore, a *bonâ fide* purchaser without notice. 4 Kent Com., 179 ; *Peters* v. *Goodrich*, 3 Conn., 146, 149 ; *Mead's Appeal from Probate*, (*supra*) ; and cases cited above.

4. By our statute conveyances of land must be recorded, but no statute or decision has been cited which requires agreements to re-convey, bonds for deeds, defeasances, &c., to be recorded.   Gen. Statutes, p. 353, sec. 11.   Had this defeasance been by parol, it could not then have been recorded, yet this transaction would have been no less in the nature of an equitable mortgage.   The law in this state does not prohibit the execution of a mortgage and a defeasance on separate pieces of paper.   That was the original way of doing it.   Manifestly, if both were recorded, the public would be fully apprised of the nature of the transaction. It is clear that when a mortgage is so drawn, each party to it can control only that part of the instrument which he holds.   It is no fraud or negligence on the part of the mortgagee, if the mortgagor does not record the defeasance which he holds, and which it is for his interest alone to record, any more than the maker would be to blame if the holder of a bond for a deed or a mortgage neglects to have the same recorded.   The law cited by the defendant would be applicable, if the parties in drawing a mortgage and defeasance in separate instruments had improperly described the debt, and had spread the same on record, for then both the mortgagor and mortgagee would have been implicated in constructive fraud or negligence.   But the debt having been properly described, all the plaintiff need do is to comply with the legal forms of registration, and this he did by recording his deed.   *Harrison* v. *Phillips Academy*, 12 Mass., 464.   Had the plaintiff purchased this property and given an agreement to sell and re-convey on payment of the purchase price, this agreement need not have. been recorded, even in New York.   *Randall* v. *Sanders*, 87 N. York, 578. And certainly such a case would be as open to the charge of constructive fraud as the one at bar, for the record would not disclose all the facts and creditors might be misled. Thus PARKER, C. J., in *Harrison* v. *Phillips Academy*, (*supra*,) says:—" Holden might have kept his defeasance secret for a time, with a view to prevent his creditors from levying upon the estate; but, unless Harrison colluded with

him for this purpose, and agreed that the defeasance should not be recorded, the fraud, if any, was Holden's and not Harrison's." See also *Kline* v. *McGuckin*, 24 N. Jer. Eq., 411. And the defendant, being in privity with the Stones, must suffer the consequences of their neglect or fraud, and not the plaintiff. To say that the deed and agreement described in the record are a mortgage in the same sense that the term is used in the cases cited by the defendant, is a play upon words. They are in the nature of an equitable mortgage only because the party holding the agreement may redeem. In all other respects they are different. The courts of this and other states have recognized this distinction, and have uniformly decided against the defendant, whenever this issue has been raised, except where statutes have prevented. *Newbury* v. *Bulkley*, 5 Day, 384; *Benton* v. *Jones*, 8 Conn., 185; *Sheldon* v. *Bradley*, 37 id., 324; *Mead's Appeal from Probate*, 46 id., 417; *Clemons* v. *Elder*, 9 Iowa, 273; *Young* v. *Thompson*, 2 Kansas, 83; *Harrison* v. *Phillips Academy*, 12 Mass., 456, 464; *Moors* v. *Albro*, 129 id., 9, 13; *De Wolf* v. *Strader*, 26 Ill., 225; *Baird* v. *Kirtland*, 8 Ohio, 21; *Judge* v. *Reese*, 24 N. Jer. Eq., 387, 397; *West* v. *Bennett*, 59 Geo., 507; 1 Jones on Mortg., § 337. And see dissenting opinions in the Pennsylvania cases cited on the other side. *Friedley* v. *Hamilton*, 17 Serg. & R., 73; *Jaques* v. *Weeks*, 7 Watts, 278. In most, if not all those states, their courts require the condition of a mortgage to describe the debt with substantially the same accuracy as do our own courts. *Clark* v. *Oman*, 15 Gray, 521; *Goddard* v. *Sawyer*, 9 Allen, 78; *Thomas* v. *Olney*, 16 Ill., 53; *Kellogg* v. *Frazier*, 40 Iowa, 502. And their recording acts are also similar to those in this state.

CARPENTER, J. This is a suit to foreclose a mortgage. The mortgage consisted of an absolute deed, and a defeasance in writing signed by the grantor, describing the debt intended to be secured by the deed, and providing for a reconveyance of the property upon the payment of the debt. The deed was recorded; the defeasance was not. Rubenia

McGilvray, a creditor and one of the defendants, attached the property as the property of the grantors. She was made a defendant in the foreclosure suit and demurred to the complainant for the following reasons: "because, upon the facts therein set out, the deed of the said Sarah C. Stone to the said Hoadly B. Ives, being absolute upon its face, but in fact given and held as a mortgage, is void against this defendant's attachment, and said attachment is a first lien upon that portion of said premises attempted to be foreclosed, which are subject to it." The case is reserved for the advice of this court.

In *Griswold* v. *Pettibone*, 4 Conn., 158, this court, after reciting the statute requiring deeds and mortgages to be recorded, says: "It is the object of this law to prevent fraud and give security and stability to title. It results, unquestionably, that the condition of a mortgage deed must give reasonable notice of the incumbrances on the land mortgaged. * * And what is not of less importance, the incumbrance on the property must be so defined as to prevent the substitution of everything which a fraudulent grantor may devise to shield himself from the demands of his creditors."

In *Stoughton* v. *Pasco*, 5 Conn., 442, the court held that "to render a mortgage valid as against strangers, it must give reasonable notice of the incumbrance on the land mortgaged." The same point was decided in *Shepard* v. *Shepard*, 6 Conn., 37, and the principle thus enunciated was recognized in *Crane* v. *Deming*, 7 Conn., 387, *Hubbard* v. *Savage*, 8 Conn., 215, and *Booth* v. *Barnum*, 9 Conn., 286. These decisions fully justify the language of WILLIAMS, C. J., in *North* v. *Belden*, 13 Conn., 376, where he says:—"Thus, it has been considered as settled, long since, that if an absolute deed is given with intent to secure a debt, such deed would be void as it respects *bonâ fide* creditors, as it does not disclose the real nature of the transaction. It places the parties in a false position as it respects the public. It holds out the grantee as the real owner, when in fact the grantor is, or may be, the owner. It tends

to lull the creditors of both parties (as the case may be) into false security, and to conceal from them the real condition of their debtors." It is idle to speak of this as an *obiter dictum*. It was appropriate and pertinent language to use in the case then before the court. The question was whether a note described in a mortgage as an absolute debt, but which was in fact given to secure a contingent liability, should be postponed to a subsequent mortgage, and the court held that it should be, notwithstanding the fact that the contingent liability was paid to the full amount of the note, because the mortgage did not disclose the real nature of the transaction. It is equally idle to say that the principle thus expressed rested upon the authority of the cases cited from the state of New York; for it is apparent that the decision is independent of those cases. Immediately after the language quoted above the court adds: "In the laws of New York the same principle is recognized. *Dey* v. *Dunham*, 2 Johns. Ch. Rep., 182; *James* v. *Johnson et al.*, 6 id., 417. And although the terms of the statutes of that state may vary from ours, the same object is kept in view."

In *Hart* v. *Chalker*, 14 Conn., 77, the court says:—"Our recording system, in its spirit, requires that the record should disclose, with as much certainty as the nature of the case will admit of, the real state of the incumbrance upon the property. And all the authorities concur in this result, that reasonable notice of the incumbrance should be given by the record."

This principle has been uniformly adhered to. Accordingly it has been held that if the debt is a contingent one it must not be described as an absolute liability. *North* v. *Belden*, (*supra*); *Rood* v. *Welch*, 28 Conn., 157; *Stearns* v. *Porter*, 46 Conn., 313.

The debt should be so described as that it will not be in the power of the parties, should they be fraudulently inclined, to bring within its protecting shield other debts. A mortgage should never be used as an instrument to conceal the debtor's property. Hence it is not allowable to describe the debt as larger than it actually is. If it does so it

operates as a fraud, for it covers up the debtor's property and tends to deceive and mislead.

Now this transaction, the defeasance being unrecorded, is contrary to the spirit of all these decisions. The record, so far from disclosing the true state of the title, shows it to be an absolute deed instead of a mortgage; it represents the grantee as the owner of the property, whereas the grantor owns it subject to the grantee's debt, and the equity of redemption is concealed and placed apparently beyond the reach of creditors, while a secret trust exists in favor of the grantor. So far from describing the debt with reasonable certainty, the record is entirely silent on the subject, and places it within the power of the parties, by collusion, if they are so disposed, to set up any claim and for any amount as a substitute for the one really intended to be secured.

If this transaction can be sustained as a valid mortgage against creditors, it will not only destroy all the benefits of the recording system as respects mortgages, but will enable the parties, by a change in the form of the mortgage, to convert the system itself into an instrument of fraud.

It is claimed that Miss McGilvray did not give credit to the grantor till more than a year after the deed was given, that her attachment was not made until after the plaintiff had taken possession of the property, that she did not make her loan on the credit of the property and was not misled to her injury, that if she had reason to believe that the deed was a mortgage she was guilty of laches in not inquiring, and that under the circumstances there was no constructive fraud. The question before us is not one of fraud, nor of due diligence; nor is it a question whether, in this particular instance, a party has been misled or deceived. It is a question of the construction of the registry law—what does it require? Is it necessary that the defeasance should be recorded? The plaintiff claims that the deed, taken in con nection with the defeasance, is a mortgage, and is seeking to foreclose it as a mortgage, and we must so treat it. The deed only was recorded. The defeasance, which is the con-

dition of the mortgage, is not on the record. In the cases referred to in which the question was whether the record disclosed the real nature of the transaction, the court did not inquire into the *bond fides* of the parties, nor whether there was due diligence or fraud. In those cases and in this, the question is one of public policy, as much so as in cases under the statute of limitations or the statute of frauds. The question is, what does the statute require? and has it been complied with? If it has, his security is good against every one; if it has not, it must be postponed to creditors.

Again, the plaintiff says—"The absolute deed to Mr. Ives being on record and the plaintiff in possession, it was sufficient notice to put the defendant on inquiry, and she is not therefore a *bond fide* purchaser without notice." The defendant is not in court as a *purchaser* from Mrs. Stone with notice of the plaintiff's deed. She was a creditor; as such she sought to collect her debt; she found this deed on record, and, on learning that it was intended by the parties as part of a mortgage, she attached the property on the ground that the whole mortgage was not recorded as required by law. When the question arises between two creditors as to the validity of a mortgage the matter of notice is not material. Suppose the deed had not been recorded at all, and she, with knowledge of the facts, had attached the property; can there be any doubt that she would hold in preference to the grantee? In such cases there is a material distinction between purchasing property voluntarily and paying money therefor, and attaching it to secure a debt. Creditors ordinarily stand on as high ground as *bond fide* purchasers without notice.

The plaintiff further contends that the deed and agreement are not a mortgage in the ordinary sense—that they are in the nature of an equitable mortgage only, and that neither the statute nor any decision in this state requires the agreement to be recorded; and that this distinction is recognized in this state and elsewhere. We do not care to examine the decisions in the other states. In this state we

find no case between such a mortgagee and creditors, involving the construction of our registry law, where this distinction has been made—certainly none where there has been a decision to that effect. There may be cases in which the question as to the effect and scope of the registry act might have been raised but was not. In any such case the decision can hardly be regarded as an authority. A brief reference to the Connecticut cases cited to this point is all that is necessary.

In *Newbury* v. *Bulkley*, 5 Day, 384, a debtor conveyed certain lands by an absolute deed to a part of his creditors. In a few days thereafter the grantees executed and delivered to the grantor a defeasance. Afterwards another creditor attached the property. He claimed that the deed and defeasance were fraudulent at common law. Neither the court nor the able counsel who argued the case alluded to the registry law, and the case does not even show that the defeasance was not recorded.

*Benton* v. *Jones*, 8 Conn., 186, was an action of trespass involving title to land. The land was deeded by a debtor to all of his creditors, but not in satisfaction of their claims. It was held, as against a creditor whose claim originated twelve years afterwards, that parol evidence was inadmissible in an action at law to prove that the deed was a mortgage; that the deed was a voluntary one and good against subsequent creditors. The question now before us was not made.

In *Sheldon* v. *Bradley*, 37 Conn., 324, a conveyance was made by an absolute deed, but which was intended in part to secure a debt and in part to defraud creditors. After the death of the grantor, on a bill by his administrator to set aside the deed, the Superior Court found that the deed was valid and vested a good title in the grantee. The grantee thereupon sold the property. In another suit by the administrator he was allowed to recover the money received above the amount of the mortgage debt. No question was made concerning the registry law.

In *Mead's Appeal from Probate*, 46 Conn., 417, *A* by an

·absolute deed conveyed land worth $5000 to *B*, to secure a debt of $1000, a separate defeasance being executed but not recorded. It was afterwards agreed between *A*, *B* and *C*, that *C*, who had other claims against *A*, should pay the debt to *B*, and should receive a conveyance of the land, which he was to hold as security for the amount paid to *B*, and also for his other claims. It was held that the transaction was not in fraud of the other creditors of *A*. *A* died insolvent. It was also held that even if the conveyance to *C* was in fraud of the insolvent law, yet as it was not actually fraudulent against creditors, the administrator could not set it aside for the benefit of creditors. It was claimed that the deed was void on the ground of fraud. It was not claimed that it was inoperative as a mortgage as to ·creditors for the reason that the defeasance was not recorded, and the court did not pass upon that question.

In some of these cases it is tacitly assumed that an absolute deed intended as a mortgage, the defeasance not being recorded, may operate as such, not only as between the original parties thereto but also as against creditors, but in none of them was the point directly made and decided. In the other cases referred to the principle is directly and firmly settled that the condition of a mortgage deed must show with reasonable certainty the nature and amount of the mortgage debt, in order that the record may disclose as nearly as may be the true condition of the title. Now it is impossible, consistently with this principle, to give effect, as a mortgage, and against creditors, to an absolute deed with a defeasance in writing or by parol, the defeasance not appearing on the record.

The result to which we have come is that the complaint is insufficient in respect to Rubenia McGilvray and that her lien on the property has the preference. The Superior Court is advised accordingly.

In this opinion the other judges concurred.