## LOUIS M. ROSENBLUTH, TRUSTEE, *vs.* THE DEFOREST AND HOTCHKISS COMPANY.

Third Judicial District, Bridgeport, October Term, 1911.

HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, Js.

A deed which is, and always has been, a nullity so far as the creditors of the bankrupt grantor are concerned, does not make the grantee therein a preferred creditor under the Bankrupt Act, since it requires a valid transfer of property to effect that result.

The question whether certain real estate could have been levied upon and sold under judicial process against a bankrupt, prior to the filing of the petition in bankruptcy, is one to be determined by the local law.

An unrecorded deed is of no validity against the creditors of the grantor or one representing them.

A deed absolute on its face will be treated as a mortgage when it is shown to have been given merely to secure the payment of a debt.

It has ever been the policy of our law to have every man's title to his real estate appear of record, as far as practicable. If, therefore, a warranty deed is accompanied with a separate defeasance which makes it in legal effect a mortgage, the defeasance must be recorded as well as the deed, otherwise the real transaction will not be disclosed of record, and the conveyance will be voidable by creditors of the grantor and by the grantor's trustee in bankruptcy.

Parties to a recorded warranty deed, which by reason of a separate unrecorded defeasance operated as a mortgage only, cannot thereafter by another secret unrecorded agreement or arrangement between themselves convert the instrument back into what it purported to be originally and make it a warranty deed good against everyone. To hold otherwise would make the real character of a deed dependent upon the private agreement of the parties entered into after its delivery and record, and without any recorded indication to the world that a changed condition had arisen.

A creditor who loses security for his debt through his own fault in failing to record a separate defeasance which should have accompanied a warranty deed and been recorded with it, is in no position to invoke equitable protection upon the theory that by relying on the warranty deed as security for his debt he had omitted to take steps to secure mechanic's liens on other property of the grantor, who has since become a bankrupt.

Argued October 24th—decided December 19th, 1911.

SUIT by a trustee in bankruptcy to secure the cancellation of certain deeds of real estate made by the bankrupt to the defendant, brought to the Superior Court in New Haven County where a demurrer to the second and third defenses of the answer and to the defendant's counterclaim was sustained (*Reed, J.*) and the cause was afterward tried to the court, *Williams, J.;* facts found and judgment rendered for the plaintiff, and appeal by the defendant. *No error.*

The plaintiff is the trustee in bankruptcy of Garrett J. Fitzgerald, a building contractor of New Haven, who was adjudged a bankrupt on February 27th, 1909. On January 4th, 1908, Fitzgerald was indebted to the defendant corporation, dealer in lumber, in the sum of $3,200 for lumber furnished him in the construction of several buildings. On that day he executed and delivered to the defendant, at its request, a warranty deed of certain land in New Haven, together with the buildings thereon, subject to an outstanding mortgage of $3,250. This deed, while absolute on its face, was in fact given and accepted as security for the payment of said indebtedness. The equity of redemption was worth $2,250. Cotemporaneously with the execution and delivery of the deed, the defendant made and delivered to Fitzgerald a collateral agreement, which, after reciting the fact of the latter's indebtedness to it, and the giving of the deed, proceeded as follows: "Now therefore, the DeForest & Hotchkiss Company hereby agrees with said Fitzgerald that when said indebtedness shall have been paid, said DeForest & Hotchkiss Company will reconvey to said Fitzgerald said house and lot, or in the event of the sale of said house and lot, that the purchase price received therefrom shall be applied to the payment of the indebtedness, and the balance, if any, shall be paid to said Fitzgerald."

This deed was recorded; the agreement never has been. Fitzgerald remained in possession until December 3d, 1908. On that date Fitzgerald, having failed to pay any of said indebtedness, or to find a purchaser for the property, executed and delivered to the defendant, at its request, a quitclaim deed of the premises, surrendered to it the agreement, and turned over to it possession of the premises. The quitclaim was not recorded.

Fitzgerald was adjudged a bankrupt upon his own petition February 27th, 1909, and the plaintiff was thereafter appointed trustee. He qualified and is acting in that capacity.

After the trial, and before judgment, counsel for the plaintiff, upon the suggestion of the trial judge and against the objection of the defendant, amended the complaint by adding thereto the following paragraph, to wit: "At the time of the execution of said quitclaim deed, the defendant was a creditor of said Fitzgerald and said deed was executed and delivered to the defendant as a preference, and the defendant had reasonable cause to believe that it was intended by the execution and delivery of said deed to the defendant to give to the defendant a preference over the other creditors of said Fitzgerald."

The court has found that Fitzgerald was insolvent at the time of the execution and delivery of the quitclaim; that in making and delivering it he intended to give a preference; that the defendant had reasonable cause to believe that he so intended; and that the effect of the transaction was to prefer the defendant over his other creditors. No person, claiming to be a creditor of Fitzgerald, claims or has ever claimed to have acquired any lien upon the property described in the two deeds since January 4th, 1908, and no person, other than the plaintiff, claims any lien upon such property,

or right thereto, adversely to the defendant, save under said mortgage.

The defendant sets up, by way of special defense and counterclaim, that at the time the warranty deed and defeasance agreement were given Fitzgerald was indebted to the defendant for materials furnished in the construction, then in progress, of the house upon the land conveyed; that at that time he was further indebted to it in two other sums for material furnished in the construction of two other houses then in process of erection, or recently erected, upon two other pieces of land; that within a short time after January 3d, 1908, he became still further indebted to it for material furnished in the completion of the house upon the land in question, and that at said date it had a right of lien upon these several properties as security for the three several sums first named, and thereafter would have had a right of lien upon the property in question, were it Fitzgerald's, to secure the last-named sum; that the security furnished by such liens would have been ample; that relying upon the transaction of January 4th, 1908, and the receipt of said warranty deed, it did not take the statutory steps necessary to perpetuate and enforce such liens for said sums, amounting in the whole to $1,680.27, and that by reason thereof, in the case of both the properties not now in dispute, the indebtedness of Fitzgerald became reduced through their conveyance, free of lien, in the satisfaction of his indebtedness. The defendant asks by virtue of these facts that it be adjudged to have an equitable lien upon the property in dispute for the amount of such sums with interest, and that the plaintiff be required, as a condition of reconveyance or revesting, to pay to the defendant such amount. A demurrer to this defense and counterclaim was sustained. Upon the trial evidence was offered, and excluded, which was claimed for

the purpose of reaching the same result as that aimed at in the defense and counterclaim thus disposed of.

Evidence claimed to show the entire scope and character of the oral agreement pursuant to which the warranty deed and agreement of defeasance were given, for the purpose of showing that the transaction of December 3d, 1908, was within its contemplation and as thus bearing upon the question of the intent which characterized that transaction, was offered and excluded.

Sundry additions to and corrections of the finding in its relation to the matter of preference are asked for.

*Leonard M. Daggett,* with whom was *Henry C. White,* for the appellant (defendant).

*Richard M. Tyner,* for the appellee (plaintiff).

PRENTICE, J.    The plaintiff, as trustee in bankruptcy, seeks from the Superior Court such equitable relief as will annul, and make as though they never were, two conveyances of real estate executed by his bankrupt to the defendant, one recorded and the other unrecorded, and give to him, as such trustee, the title to such real estate, unaffected by such conveyances, which title by reason thereof now appears upon the land records to be in the defendant.    The complaint as finally amended contains, in support of its prayers, certain allegations which assert the invalidity, as against the plaintiff, of the conveyances in question, by reason of noncompliance therein, or in connection therewith, with the requirements of the law of this State.    It also contains others which make an appeal to those sections of the Bankruptcy Act which deal with preferences.

These two classes of averments relate to entirely separable and independent matters.    If the first posi-

tion is well founded it is sufficient for the plaintiff's purpose, and the second is wholly superfluous. It is a necessary condition precedent to a preference, that there has been a transfer of property by the bankrupt whereby a creditor is enabled to obtain a greater percentage of his debt than other creditors of the same class. Bankruptcy Act, § 60a, 32 U. S. Stat. at Large, p. 799, § 13. If, therefore, the conveyances in question were originally, and remained, a nullity as against the grantor's trustee in bankruptcy, there was no transfer within this definition, and all those questions in the case which center about the charge that the bankrupt was guilty of an attempted preference would be altogether immaterial. Our first question, therefore, naturally relates to the legal effect, as against the plaintiff, to be given to the two conveyances.

Section 70a of the Bankruptcy Act provides that a trustee of the estate of a bankrupt, upon his appointment and qualification, shall be vested by operation of law with the title of the bankrupt, as of the date he was adjudged to be a bankrupt, to all property not exempt which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him. 30 U. S. Stat. at Large, p. 566. Whether or not property, prior to the filing of the petition, could have been levied upon and sold under judicial process against the bankrupt, is a matter to be determined by the local law. *Thompson* v. *Fairbanks*, 196 U. S. 516, 523, 25 Sup. Ct. Rep. 306. The question to be decided thus becomes resolved into one as to whether under the law of this State a creditor of the bankrupt, armed with a judgment and execution, could, immediately before the filing of the petition in bankruptcy, have appropriated, in satisfaction of the judgment, the real estate interest of the bankrupt which the two deeds purported to convey

to the defendant, or whether these deeds, or one of them, were at that moment effective to prevent such an appropriation.

The quitclaim, which is the second in the order of time of the deeds, may be dismissed summarily. Having been withheld from record, it clearly would not, as a conveyance, have stood in the way of the creditor. General Statutes, § 4036. It is the warranty deed of January 4th, 1908, or, more strictly speaking, that deed taken in connection with the events of December 3d, 1908, which presents the questions calling for discussion.

The defendant concedes that this later deed, although absolute in form, must be treated as a mortgage. *Williams* v. *Chadwick*, 74 Conn. 252, 255, 50 Atl. 720; *French* v. *Burns*, 35 Conn. 359, 363. While, as between the parties, good as a mortgage, it was not valid as against creditors of the grantor. *Ives* v. *Stone*, 51 Conn. 446; *Merwin* v. *Richardson*, 52 id. 223, 237. Clearly this was the situation after the deed was recorded down to December 3d, 1908, at least. On that date the parties to the deed and unrecorded agreement had such further transactions that their actual status in relation to the property became conformed to their apparent status as disclosed by the recorded instrument, and their rights, as between themselves, such as the record announced them to be. It then, for the first time, came to speak the truth. The defendant claims that from that moment it became a valid conveyance as to all persons who had not acquired a lien upon the property during the interval when it did not do so. It makes a further and secondary claim that this transaction of December 3d, 1908, which was within four months of the adjudication in bankruptcy, did not constitute a transfer as of that date within the meaning of the Bankruptcy Act, but related back to

the original transfer, and simply rescued it from its infirmity. This secondary claim has no pertinence except as bearing upon the matter of preference, and, therefore, we have no concern with it in our present inquiry. We have for its purpose only to learn whether or not, the instrument on record having come to state the precise present position of the parties as between themselves, it thereupon acquired validity for the future as against all the world.

We think that it did not. "It has ever been the policy of our laws, to make every man's title to his real estate, as far as practicable, appear of record." *Beach* v. *Osborne,* 74 Conn. 405, 411, 50 Atl. 1019, 1118; *Bush* v. *Golden,* 17 Conn. 594, 601. To this policy we have given a rigid adherence, and in pursuance of it we have repeatedly held that a mortgage to be valid as against creditors must "disclose, with as much certainty as the nature of the case will admit of, the real state of the incumbrance upon the property." *Hart* v. *Chalker,* 14 Conn. 77, 79; *Ives* v. *Stone,* 51 id. 446, 456. The reasons underlying this policy are stated at length in the last-named case, and need not be repeated. It would be a distinct relaxation of the strict application which has always been made of that policy, if we were now to hold that a deed, which, although absolute on its face, was, when made, a mortgage, by reason of the secret agreement of the parties, and thus a mortgage which not only did not disclose the real state of the incumbrance, but professed to be a conveyance which divested the grantor of all interest in the property, might be converted back again into what it was in form, and made valid as to everybody according to its tenor, through the operation of another secret agreement. That would be to hold that a deed might have its real character dependent upon the private agreement of the parties entered into after its delivery and record,

and without any record indication to the world that a changed condition had arisen. A recorded instrument might thus have one effect one instant, and another the next, according as the parties chose to deal with the situation, and land records come to speak in uncertain and uninforming language, when certainty and information are the ends sought. "Once a mortgage always a mortgage" is an accepted principle applicable here. *Lounsbury* v. *Norton*, 59 Conn. 170, 178, 22 Atl. 153. It will not do, if our recording system is to accomplish its intended purpose, to say that it was competent for these parties, however innocently they may have acted, to change their relations to this land or interest in it, as against all the world, by their mere private agreements and action.

This conclusion, that the deed of January 4th, 1908, was not validated as to creditors by the events of December 3d, 1908, carries with it the inevitable conclusion that it never became a valid conveyance as to such persons and as to this plaintiff. The judgment in the latter's favor was, therefore, justified. This justification results from a very few salient and unquestioned facts of the situation presented. All other claimed or found facts and allegations of fact are, therefore, superfluous. That being the case, all the questions of law presented by the record and discussed in the briefs relating to the amendment of the complaint, to the rulings excluding testimony offered by the defendant as bearing upon the subject of intent, to the finding and conclusions of the court upon subordinate matters pertinent to the claim of preference, and to the court's ultimate conclusion upon that subject, in so far as it may be claimed to have entered into the judgment, possess no further interest, and need not be considered.

One question remains. The defendant, by rulings upon demurrer and the admission of testimony, was

prevented from asserting its claim that it should not, in any event, be deprived of the security of the conveyance of January 4th, 1908, except upon the condition that the plaintiff pay to it the amount of certain lien claims which it, relying upon that security, failed to perpetuate, by taking the necessary steps. Were the question one of the existence of a preference, the fact that one security was substituted for another would have been distinctly material, at least if the surrendered security was of equal value with the substituted. *Cook v. Tullis*, 18 Wall. (85 U. S.) 332, 340; *Stewart v. Platt*, 101 U. S. 731, 743. But the defendant is not by the judgment deprived of any security or property for the reason that it was obtained as a preference. His loss is one which results from a failure to comply with the law of this State governing conveyances and incumbrances. The fault lies at the defendant's own door, in that it withheld from record a document, which, being there, would have disclosed the true state of the title. Neither the plaintiff nor his bankrupt were responsible for that fault. The defendant certainly is in no better position, and presents no stronger claim for equitable protection by way of compensation for what it gave up, than any other mortgagee would who, having accepted and recorded a mortgage invalid for want of a sufficient description of the condition, should ask to be reimbursed for the consideration which he in fact gave before the mortgage should be declared inoperative.

There is no error.

In this opinion the other judges concurred.