THE LAMPSON LUMBER COMPANY *vs.* CONCETTA
CHIARELLI ET ALS.

Third Judicial District, Bridgeport, October Term, 1923.
WHEELER, C. J., BEACH, CURTIS, KEELER and KELLOGG, Js.

Questions touching the validity of a mortgage or lien should be raised by answer or demurrer, and those not so presented are not cognizable upon a hearing had merely to fix the amount of the incumbrance due, after a default for the nonappearance of some of the defendants and a disclosure of no further defense by the rest.

Under our law it is sufficient if the condition in a mortgage deed given to secure future advances, discloses the nature, purpose, and extent of the obligation secured, with such certainty as to enable subsequent purchasers or incumbrancers to ascertain at any time, either from the condition itself or by inquiry *aliunde*, the approximate amount of the then-existing indebtedness.

In the present case the deed, which was duly recorded, was conditioned for the payment, to the amount of $2,000, for lumber and other building material to be furnished on credit, at current market prices, by the mortgagee to the mortgagor for use in constructing a house on the mortgaged land, and for the discharge of any in-

debtedness thereby accruing within six months from the date of the instrument with interest. *Held* that such a deed satisfied legal requirements and was properly sustained by the trial court when attacked by demurrer for vagueness or uncertainty.

The Connecticut cases upon this subject reviewed, distinguished and applied.

Argued October 23d, 1923—decided March 1st, 1924.

ACTION to foreclose a mortgage of real estate given to secure a contract to furnish building material to the mortgagor to the amount of $2,000, and also to foreclose a mechanic's lien for $206, brought to and tried by the Superior Court in New Haven County, *Brown, J.;* facts found and judgment rendered for the plaintiff, and appeal by certain of the defendants. *No error.*

The first count of the complaint in this action alleges that one Oscar J. Riccio, the owner of certain real property situated in the town of West Haven, on March 28th, 1922, mortgaged the same to the plaintiff by a deed containing the following condition: "The condition of this deed is such that whereas the said grantee, The Lampson Lumber Company, Incorporated, has agreed to sell and furnish to me lumber and other building materials at current market prices, to be used in the erection and construction of a dwelling-house on the land above described, and has agreed to give me credit for the same to the amount of $2,000, and .

"Whereas I have agreed to pay and discharge any indebtedness which may accrue on account of said sales within six months from the date of this instrument, together with interest on the same at the rate of seven per cent per annum.

"Now, therefore, if any and all indebtedness from me to said The Lampson Lumber Company, Incorporated, on account of the matters .hereinbefore de-

scribed shall be fully paid and satisfied as aforesaid, then this deed shall be void."

It is further alleged that thereafter and prior to October 11th, 1922, the plaintiff sold and delivered certain materials to Riccio, for use in construction of this house, which he had agreed to buy from plaintiff and the plaintiff had agreed to sell to him to the value of $2,000, which sum was wholly unpaid; further, that Riccio on May 17th, 1922, by deed duly recorded, conveyed the mortgaged premises to the defendant Chiarelli. Then follows an allegation of the existence of certain mortgages and mechanic's liens upon the premises, and that all accrued after the plaintiff's mortgage. The complaint further avers that on May 17th, 1922, by deed duly recorded, the defendant Chiarelli entered into an agreement with Riccio to reconvey the premises, that on December 5th, 1922, Riccio was adjudicated a bankrupt, and that on December 21st, 1922, Harry L. Edlin was appointed his trustee in bankruptcy and was still acting; also that defendant Chiarelli was in possession of the premises.

The second count of the complaint alleges that plaintiff furnished materials and rendered services of the value of $206.84 in the erection of a building upon the mortgaged premises between May 29th, 1922, and October 14th, 1922; that on December 13th, 1922, within sixty days after ceasing so to do, it filed for record, in the land records of the town of West Haven, a certificate of mechanic's lien in due form which was duly recorded, and that the claim for said sum was still owned by the plaintiff and was unpaid. The remaining allegations as to liens, mortgages, the bankruptcy of Riccio and the contract of Chiarelli to convey to him, are the same as corresponding allegations of the first count. Foreclosure of the mortgage and of the mechanic's lien is claimed.

Certain of the defendants demurred to the first count of the complaint: (1) because the condition of the mortgage did not disclose the nature of the transaction with reasonable certainty; (2) because the mortgage was not valid against creditors of the mortgagor; (3) because the condition was too indefinite to give validity to the mortgage against creditors, by reason of giving no precise information as to the amount of the indebtedness. The court overruled the demurrer. Thereafter judgment by default for nonappearance against certain of the defendants and against the remainder upon a disclosure of no defense was entered, and on May 14th, 1923, the plaintiff and certain of the defendants appeared and were fully heard on the complaint as theretofore amended, to which no plea or answer had been filed. The court found the sum of $2,068.34 due from Riccio to plaintiff on the mortgage debt, and $213.78 on the mechanic's lien, and thereupon rendered judgment of foreclosure in the usual form.

The court found all of the allegations of the complaint true. In addition to the facts above recited, appearing in the complaint, the court found that Riccio had used the materials furnished in the erection of a house upon the mortgaged premises, and that all claims made by any defendants were subsequent to the plaintiff's mortgage and lien; that on October 11th, 1922, the value of the material so furnished reached a total of $2,000; that the lien of defendants Burack & Greenhouse was for materials and services furnished and rendered between August 30th, 1922, and November 30th, 1922, for which a certificate was filed December 26th, 1922; that the lien of the defendant Ugucioni was for materials and services rendered and furnished between September 4th, 1922, and October 4th, 1922, for which a certificate was filed December 30th, 1922.

Certain of the defendants whose appearances are

noted below appealed from the judgment, and now assign error of the trial court in holding that plaintiff's mortgage had priority over the interest of these defendants; in finding that plaintiff had a valid mechanic's lien as against appealing defendants; in overruling the demurrer to the first count of the complaint; and in holding that recovery could be had on both the mortgage and the mechanic's lien.

*Benjamin F. Goldman* and *Harry L. Edlin*, for the appellants (defendants Harry L. Edlin, Trustee, Burack & Greenhouse, Smith & Tinari, and Giovanni Ugucioni).

*John Elliott*, for the appellee (plaintiff).

KEELER, J. The defendants in their brief attack the validity of the mortgage in question by reason of the fact that although the mortgage is dated March 28th, 1922, plaintiff did not commence to furnish materials until May 28th, 1922, prior to which last date, on May 17th, 1922, Riccio had conveyed the mortgaged property to Chiarelli, and had taken back a contract to reconvey. They claim that at the time Chiarelli became the owner of the premises, nothing had been advanced by way of furnishing materials, and any advances thereafter made were made to Chiarelli or the building contractor. The record does not disclose the date of recording the conveyance from Riccio to Chiarelli and of the contract to reconvey, but assuming that these instruments were recorded on or somewhere near the date of their execution, anyone examining the record would have found a mortgage made by Riccio while owning the legal title to the land, and the other two instruments which, taken together, would have revealed an equitable ownership in Riccio which would have been held under the mortgage as after-ac-

quired estate. If after such an examination, such a person should have discovered, as he might have done, that from May 28th onward, materials were being delivered to Riccio and used on the job as found by the court, there is nothing in the record to show that anyone, including the junior lienors, delivered any materials or performed any services on the credit of Chiarelli. If that was the case and the record dates of the deed from Riccio to Chiarelli and of the latter's contract to reconvey were of importance, such matters should have been set up in an answer, and doubtless would have been. In the hearing had by the court in the nature of a hearing after default, such matters are not cognizable. This point was not specially pressed in argument and is not meritorious.

The principal claim of defendants is that the condition of the plaintiff's mortgage is so vague, indefinite and uncertain as to be invalid as against subsequent incumbrancers.

The rule uniformly held in this jurisdiction and elsewhere is, that the mortgage deed should show by its record the real nature of the debt or transaction involved so far as it can be disclosed, and enable a creditor or other person interested to determine the real facts, or at least suggest some means of determination. This is the doctrine of the leading case of *North* v. *Belden*, 13 Conn. 376. This court had occasion shortly after to apply and illustrate this doctrine in *Hart* v. *Chalker*, 14 Conn. 77, 79, and the opinion says: "Our recording system, in its spirit, requires that the record should disclose, with as much certainty as the nature of the case will admit of, the real state of the incumbrance upon the property. And all the authorities concur in this result, that reasonable notice of the incumbrance should be given by the record. What is reasonable notice, in certain cases, has been a question.

Certain points, however, we think, are settled: that if a mortgage is given to secure an ascertained debt, the amount of that debt ought to be stated: that if it is intended to secure a debt not ascertained, such *data* must be given respecting that debt as will put any one interested in the inquiry, upon the track leading to a discovery: and if given to secure an existing or future liability, the foundation of such liability must be set forth." In commenting upon the passage last quoted, this court says in its opinion in *Merrills* v. *Swift*, 18 Conn. 257, 265: "But whatever this [reasonable notice] may be, the record should, as expressed by Ch. J. *Williams*, in *Hart* v. *Chalker*, 14 Conn. 79, disclose, with as much certainty as the nature of the case will admit, the real state of the incumbrance. By this is intended, not that a description, or a more certain one, of the incumbrance, is dispensed with, because it happens, from the accidental situation of the parties at the time, not to be in their power to furnish it; but that the character of the debt or liability to be secured, is itself to determine what degree of certainty in its description is requisite."

The combination of the statements above made give us not only the principle and doctrine applicable to transactions of the sort under consideration, but furnish us with a rule, that is, that the debt or obligation secured should be stated with all the certainty possible having regard to its nature and purpose. To this effect see *Ives* v. *Stone*, 51 Conn. 446, 456; *Rosenbluth* v. *De-Forest & Hotchkiss Co.*, 85 Conn. 40, 47, 81 Atl. 955. Considering the instant case in the light of what has just been said, we find the mortgage deed conditioned for the payment, up to the amount of $2, 000, by Riccio to the plaintiff, for all lumber and other materials to be furnished by it to him on credit at current market prices, and to discharge any indebtedness so accruing

within six months from the date of the instrument, with interest at seven per cent. There was recited a positive obligation on the part of the plaintiff to sell the supplies to Riccio for use in the construction of a certain building at current prices, the limit of credit was fixed at $2,000, and there was a positive obligation on the part of Riccio to pay for what was furnished him. No claim is made but that the transaction was truthfully stated, but the defendants claim that the statement is indefinite, because they, and others who might have an interest in the property, could not ascertain the amount due at any given time from the record of the mortgage, without inquiry from some other source of information. They thus impose a burden on the parties to the transaction which the law does not impose. In support of their contention defendants cite *Pettibone* v. *Griswold*, 4 Conn. 158. From the point actually decided in this case, their claim gets no support; the condition was for the payment of a note for $4,000, and all notes which the grantee in the mortgage might indorse or give for the mortgagor, and all receipts which the mortgagee might hold against the mortgagor. The court, for the most obvious reasons, held the mortgage invalid for manifest indefiniteness. But defendants rely upon a part of the opinion which says that the mortgage must furnish a guide to investigation, and further: "And what is not of less importance, the incumbrance on the property must be so defined, as to prevent substitution of everything, which a fraudulent grantor might devise, to shield himself from the demands of his creditors." In the case cited there did exist just that opportunity for fraudulent devices on the part of the mortgagor, for there was no limit in amount or time upon the obligations which might be covered by the mortgage. In the instant case there is a limit of amount to the sum of $2,000, and a very

practical limit in time furnished by the period necessary to construct the building, the progress in building of which was open to all observers. In *Booth* v. *Barnum*, 9 Conn. 286, 290, the case of *Pettibone* v. *Griswold*, 4 Conn. 158, was relied on, by reason of the above quoted language, to avoid a mortgage wherein there was a statement of a debt as of a sum "or thereabout," and the court in its opinion says: "I think otherwise; and that in the absence of all fraud, it would be extremely inequitable to suffer such an objection to prevail. The principle laid down in one of the last cases, which has occurred, is, that the debts must be described with sufficient certainty to enable subsequent purchasers and creditors to ascertain, either by the condition of the deed or by enquiry *aliunde*, the extent of the incumbrance. *Hubbard* v. *Savage*, 8 Conn. 215, 219. A more rigid doctrine cannot be adopted, without subverting the fairest contracts. In that case, all the prior cases were reviewed; and cases were there cited of very high authority, in which even more liberal principles had been adopted. *Shirras* v. *Caig & Mitchel*, 8 Cranch [11 U. S.] 34; *Conrad* v. *Atlantic Ins. Co. of New York*, 1 Pet. [26 U. S.] 386.

"Nor can I perceive any inconvenience to purchasers or creditors, when it is now considered everywhere as the settled doctrine in equity, that 'what is considered as sufficient to put a person on enquiry, is considered as conveying notice; for the law imputes to a person knowledge of a fact, of which the exercise of common prudence and ordinary diligence must have apprised him.' *Peters* v. *Goodrich*, 3 Conn. 146, 150; *Sigourney* v. *Munn*, 7 Conn. 324, 333."

This exposition of the law has been often referred to in later cases, and has apparently been of controlling authority. The defendants also rely upon *North* v. *Belden*, 13 Conn. 376, but the point there decided

in no way touches their contention; the condition in that case counted upon a note for the definite sum of $500, when in fact the obligation intended to be secured was one for future endorsements by the mortgagee. The mortgage was held invalid because it was untrue, not for indefiniteness. In *Hart* v. *Chalker*, 14 Conn. 77, also relied upon by defendants, the amount of the note specified in the condition was lacking, and the mortgage was held void for indefiniteness. No other result is imaginable, but the case gives no support to defendants' claim. The case of *Balch* v. *Chaffee*, 73 Conn. 318, 47 Atl. 327, cited by the defendants, is equally unavailing to support their case. That case was on all fours with *Pettibone* v. *Griswold*, 4 Conn. 158, in that the condition was for the payment of future notes which might thereafter be given, unlimited as to time or amount. Great dependence is placed by defendants upon the case of *Bridgeport Land & Title Co.* v. *Orlove Co.*, 91 Conn. 496, 100 Atl. 30. In that case the condition of the mortgage recited that the mortgagor had been unable to deliver "certain flour" purchased of him by the mortgagee, whereby the mortgagee might suffer loss, and provided that if the mortgagee should thereby suffer loss the mortgagor would save the mortgagee harmless therefrom for eighteen months from the date of the mortgage. The court held the mortgage as too indefinite to have validity, because the expression "certain flour" conveyed no information as to what flour was intended, nor was any maximum pecuniary limit placed upon the obligation sought to be secured. In the opinion the court says: "A creditor seeking information as to the amount of this incumbrance would receive no intelligence from the record of this instrument. He would have to rely upon parol evidence, which of necessity would be furnished by the parties

to the mortgage. Reliance would have to be placed upon this kind of testimony rather than upon the land records of the town." It is upon the expression quoted that defendants build their argument. As to this claim counsel for plaintiff very pertinently observes that this mortgage was "to secure indemnity for absolutely indefinite and unlimited undertakings. The court did not intend to imply that resort to the parties was not proper, but only that it was subject to the infirmities named. The inquiry would be limited within no scope." These observations indicate the true distinction between the case cited and the instant case. In the latter the nature, purpose and extent of the obligation is clearly stated. The nature was the furnishing of lumber and other building supplies; the purpose was the erection of a building; the extent in value was $2,000.

The principles and rules which we have elaborated above, have been followed and applied in *Crane* v. *Deming*, 7 Conn. 387; *Merrills* v. *Swift*, 18 Conn. 257; *Hubbard* v. *Savage*, 8 Conn. 215; *Booth* v. *Barnum*, 9 Conn. 286; *Bacon* v. *Brown*, 19 Conn. 29; *Potter* v. *Holden*, 31 Conn. 385; *Mix* v. *Cowles*, 20 Conn. 420; *Beach* v. *Osborne*, 74 Conn. 405, 50 Atl. 1019, 1118; *Weissman* v. *Volino*, 84 Conn. 326, 80 Atl. 81. In the case last cited the mortgage secured, among other things, the payment of advances to be made from time to time by the mortgagee to the mortgagor, evidenced by four due bills given to the latter by the mortgagee falling due at certain stages of the work upon a certain building. The court held the mortgage valid. Defendants attempt to distinguish this case from the instant case, in that the due bills provided for definite payments at different stages of construction of the building, and that a creditor could by observation determine the progress of the building

and the amount paid or payable. The distinction is unsound. Any creditor capable by observation of determining the progress in construction of a building as set forth in due bills, would be equally able to determine the value of lumber already furnished in its construction.

The mortgage in question evidences an ordinary building loan, only differing from those made every day in that the advances were to be made in goods and not in money. Such loans have been uniformly upheld. There is an obligation on the part of the mortgagee to deliver goods to the market value of $2,000, and an obligation on the part of the mortgagor to pay for the goods delivered, and the time covered by the obligation, while not exactly expressed, is limited by the period ordinarily required to put up a building of the kind intended. There appears upon the face of the record sufficient facts to enable any person interested in the premises, to ascertain by ordinary diligence, at any time, the approximate amount of the then-existing indebtedness. The trial court did not err in holding the mortgage valid.

The only other reason of appeal properly stated or which is pursued by the defendants upon their brief, is the first of the additional reasons of appeal, to the effect that the court erred in holding that the plaintiff had a valid lien upon the premises prior to that of the appealing defendants.

Upon this assignment of error they claim that the finding shows that the real date of commencement of plaintiff's lien is October 11th, 1922, the date after which materials were furnished which were not paid for by the application of the sum secured by mortgage, and not May 28th, 1922, as claimed by the plaintiff and found by the court; and that therefore the lien was void for an intentional and fraudulent misstate-

ment of fact.  They also claim, for the same reason just stated, that the liens of Burack & Greenhouse and of Uguicioni, each of which accrued prior to October 11th, 1922, have priority over plaintiff's lien.  They further claim that the interest of defendant Edlin, as trustee of the bankrupt estate of Riccio, dates back to May 17th, 1922, when Riccio obtained an agreement from Chiarelli to reconvey the premises to him, more than four months prior to the time when the plaintiff commenced to furnish materials, and that the court erred in holding that plaintiff's lien was prior to the interest of Edlin as trustee, who stood in the shoes of Riccio.

Plaintiff claims that these grounds of error are not maintainable by reason of the fact that thereby are raised certain questions of priority to be disposed of only when properly raised in an answer, and not proper to be determined in a hearing without plea and answer, which is only concerned with fixing the amount of incumbrance; and further, that the disclosure on the part of these defendants, after the overruling of the demurrer to the first count, that they had no defense, effectually bars them from making the claims above noted.

The objection of the plaintiff is well taken.  In a hearing of the sort above indicated, the court will only inquire into the amount of the debt due, and not consider other grounds of defense not bearing thereon and raising issues which go to the right, and not the amount, of the recovery.  Furthermore, these defendants were called upon after the trial court had disposed of the demurrer, to state whether there existed any further defense, and disclosed that they had no defense.  This certainly was the most direct and effective way of satisfying the court that no defense would be made, and it became its duty under the rule (Practice Book, p. 262,

§ 90) to render judgment for the plaintiff, without a hearing on any further matters except for the necessary ascertainment of the amount due on the lien.

There is no error.

In this opinion the other judges concurred.