SINCLAIR, SCOTT COMPANY vs. BENJAMIN MILLER.

Third Judicial District, Bridgeport, October Term, 1907.
BALDWIN, C. J., HAMERSLEY, HALL, PRENTICE AND THAYER, Js.

General Statutes, § 4132, specifies the kinds of personal property which may be the subject of a valid chattel mortgage, while § 4134 provides that every person who loans money upon a note secured by a mortgage of personal property, in which the sum actually loaned is overstated, shall be fined or imprisoned, or both; and that the note and mortgage shall be void. *Held* that in view of the drastic and highly penal character of § 4134, and of the consequences which would flow from a literal interpretation, its provisions must be construed strictly and their application confined to mortgages of the chattels described in § 4132.

Argued October 24th—decided December 17th, 1907.

ACTION to recover damages for the conversion of a motor-car, brought to and tried by the Court of Common Pleas in Fairfield County, *Scott, J.*, upon a demurrer to the reply; the court sustained the demurrer and rendered judgment for the defendant, from which the plaintiff appealed. *No error.*

The plaintiff, claiming to be the owner by purchase from another party of a motor-car valued at $2,000, brought his action for damages for its conversion by the defendant,

who, it was alleged, had forcibly taken it from the immediate possession of still another party, in whose custody it had been placed by the original owner in storage. Notice to the defendant of the plaintiff's purchase, demand of the defendant by the plaintiff for the delivery to him of the car, and the defendant's refusal to comply with such demand, were also alleged. The defendant answered that the plaintiff's alleged vendor had mortgaged the car, retaining possession thereof, to the defendant to secure an indebtedness of $275, as evidenced by a thirty-day note for said sum, and a mortgage to secure the same, which was annexed to the answer, and that some three months later, said note being unpaid, the defendant obtained possession of the car from its storage custodian. It was also alleged that the note remained unpaid. The plaintiff's first reply raised an issue of fact afterward determined in favor of the defendant. The second reply set up that said note and mortgage were given to the defendant by the plaintiff's vendor, the first for a loan of $250, a sum less than that stated therein, and the second to secure said note, and also that the sum of $25 taken by the defendant for the use of said sum loaned was an interest charge greater than the rate allowed by law to be charged by pawnbrokers, and that therefore said note and mortgage were void under the statute (§ 4134). The plaintiff demurred to this reply for reasons, in substance, that a note and mortgage of the kind described were not invalidated by the statute relied upon. This demurrer the court sustained. Its action in so doing constitutes the sole basis of the appeal.

*Henry Greenstein,* for the appellant (plaintiff).

*Henry E. Shannon,* for the appellee (defendant).

PRENTICE, J. The facts in this case are precisely analogous to those presented in *Morin* v. *Newbury,* 79 Conn. 338, 65 Atl. 156, save that here there was executed and delivered, as security for the note given for a greater sum

than that actually loaned, an instrument in writing in the
form of a mortgage of personalty, while in the former case
the instrument was in the form of an absolute bill of sale
but intended as security for the note. In that case we
commented upon the possible difference in the effect which
might be given to the two forms of intended security; but
we said that whatever that difference might be, it would
be without importance as bearing upon the question before
the court, which was one as to the true meaning and intent
of § 4134 of the General Statutes, then, as now, appealed
to to invalidate an apparent obligation, since it was clear
that the only reasonable construction to be given to its
penal provisions was one which limited their application
to cases where the chattel mortgage of our statutes, ef-
fective when recorded as against the world, was given.
Certain of the reasons for that conclusion, having a special
relation to the condition disclosed in that case, were then
indicated. They were, however, by no means exhaustive.
It has been urged upon us in the present case that the pur-
pose of the statute, first enacted in 1899 (Public Acts of
1899, p. 1084, Chap. 165), was not, as might be inferred
from the opinion in the former case, either the denial of
the benefits of the chattel mortgage statute to those who
would use its provisions to further their unconsciona-
ble purposes, or the protection of the public from false
information conveyed by the public records, but rather
the protection of the individual borrower from the exac-
tions of those who might take advantage of his necessities
to accomplish extortion.

If the General Assembly entertained any such purpose
as the one thus indicated as its sole or partial reason for
the enactment of the statute, is it not strange that its
penalties were not extended to all cases where security
for the unconscionable obligation is taken, whether that
security be in the form of a mortgage of chattels, a
pledge, or a mortgage of real estate? The inherent vice
of one of these forms of safeguarding a harsh contract
would seem to be as great as another. But is it, after

all, the taking of security for the extortionate obligation which constitutes the real vice to be eradicated, if it is the aim of the legislator to shield the individual from the exactions of others resulting from the enforcement of obligations assumed? Does not the real vice consist in the creation of the harsh obligation to pay the unconscionable sum? Why, then, did not the statute, if its aim was to protect the unfortunate from the consequences of their own acts and contracts, seek to punish him who should exact from his fellow the obligation condemned as unreasonable? Had this apparently logical course been pursued, a situation calling for explanation would have at once developed, and one significant of the legislative purpose. By the accepted policy of our law, the usurer, however extortionate his demands, incurs no forfeiture or penalty. The only hazard he assumes with his extortionate bargain is that in the event of an action he will be unable to recover more than the amount he has loaned and legal interest. The suggested regulation would leave this general policy unchanged, save that the condemnation of the law would fall, and fall heavily, upon him who reserved interest at the rate of from twenty-four to sixty per cent. per annum, depending upon the amount loaned, as also upon him who added to the principal sum agreed to be repaid so much as even a single dollar. Public Acts of 1905, Chap. 235, p. 440, § 7. In this, consistency would be hard to discover.

Again, under the law as it was when the statute under consideration was enacted, the pawnbroker or other loaner of money upon pledge, if he exacted more than the permitted interest charge, rendered himself liable to a *qui tam* forfeiture and no other penalty. General Statutes, §§ 4659, 4661. Under the existing statute imprisonment cannot be imposed for any first or second violation by him of any regulation of his calling. Public Acts of 1905, p. 438, Chap. 235. If our § 4134 is to have the construction claimed for it, its far more drastic penalties attach to the making of a similar loan, if only it be secured, not after

the methods of the pawnbroker, but by the means of a chattel mortgage. Reasons for thus lifting the pawnbroker and his methods into a position of comparative favor are not apparent, although it would doubtless be a source of gratification to him to feel that his calling, which had so long been regarded as one peculiarly demanding special regulation, had at last come to be considered as no longer deserving preëminence in that regard, or at least as respects the incurrence of penalties.

These suggestions as to the consequences which would flow from the claimed construction of the statute clearly indicate that the legislative purpose in its enactment was other than that urged in support of that construction, and that some other interpretation must be given to its uncertain language. That other interpretation, which makes the enactment a consistent one, is that which has been referred to as embodied in *Morin* v. *Newbury*, 79 Conn. 338, 65 Atl. 156. That interpretation renders the statute inapplicable to the present situation.

There is no error.

In this opinion the other judges concurred.