CATHERINE MOZWISH *vs.* PETER SIRUS ET AL.

First Judicial District, Hartford, March Term, 1931.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued March 4th—decided April 6th, 1931.

*Ralph M. Grant,* for the appellant (defendant).

*James J. O'Connor,* for the appellee (plaintiff).

HAINES, J.   On September 13th, 1928, the defendant Sirus owed Peter Mozwish $1715.13 and on that date Sirus requested of Mozwish a further loan of $100 which the latter then agreed to furnish on condition that Sirus would give a promissory note for $1800 secured by a mortgage upon certain tobacco owned by Sirus.   The agreement was concluded, and in pursuance thereof Sirus delivered to Mozwish the note and mortgage on the date above referred to, and four days later Sirus received from Mozwish $20, and two days thereafter $80, making the $100 agreed upon on September 13th.   The mortgage was recorded the day it was given.   On November 8th, 1928, the payee Peter Mozwish assigned the note and mortgage to the plaintiff and the assignment was duly recorded.   On December 31st, 1928, the defendant Urbansky attached the tobacco referred to, in an action against Sirus and a certificate of attachment was received in the town clerk's office January 27th, 1929, but was not recorded or indexed.   In April, 1929, the tobacco was sold for $850; and by stipulation of the parties, this sum was deposited with Charles Sudarsky, an attorney, who agreed in writing, upon the mutual agreement of the plaintiff and Urbansky, to pay over the sum to such

persons as might be found by the court to be entitled thereto.

The sole contention of the defendant Urbansky now is, that the failure of the mortgagee to actually advance the $100 before the note and mortgage were delivered to him by Peter Sirus had the effect of rendering the note and mortgage void under the provisions of General Statutes, § 5095, which reads as follows: "CERTAIN CHATTEL MORTGAGES VOID. PENALTY. Any person who shall loan money upon a note secured by mortgage upon personal property, in which the sum of money loaned is stated to be greater than the amount actually loaned, or in which the rate of interest to be charged is greater than the rate allowed by law to be charged by pawnbrokers, shall be fined not more than fifty dollars or imprisoned not more than three months or both; and the mortgage and note secured thereby shall be void." This claim was overruled by the trial court and judgment rendered for the plaintiff, and by this appeal the question is now presented to us.

This statute was enacted in 1899—Chapter 165—and has remained unchanged since that time. Its purpose is not primarily, the protection of the borrower against an exaction made possible by his necessity, but to ensure the veracity and reliability of our recording system, and the spirit and fair import of its language is to furnish to other creditors the same reliable information as our law requires in the case of mortgages of real property. "This statute is distinctly penal and should therefore receive a strict construction, and no act should be held to be in violation of it which does not fall within its spirit and the fair import of its language. . . . The same potent reasons which have led to the requirement that mortgages of realty should correctly state the debt secured thereby, in order that

the required notice to the world through our recording system should not convey false information, exist why these recorded mortgages of personalty should not overstate the debt for the security of which they are given." *Morin* v. *Newbury* (1906) 79 Conn. 338, 340, 341, 65 Atl. 156. The indicated requirement as to mortgages of realty is thoroughly established in this State. *Stein* v. *Davidson,* 110 Conn. 4, 11, 12, 147 Atl. 1. The scope of this requirement is well stated as follows: "The law requires 'that a mortgage, to be valid against subsequent bona fide purchasers and incumbrancers, must be so drawn that the record of it will give notice with reasonable certainty of the nature and amount of the incumbrance upon the property'; . . . or . . . that the debt 'must be described with sufficient certainty, to enable subsequent creditors or purchasers to ascertain, either by the condition of the deed or by enquiry *aliunde,* the extent of the incumbrance.' " *Beach* v. *Osborne,* 74 Conn. 405, 408, 50 Atl. 1019, 1118.

In the case last cited a mortgage was given for $3500, the consideration for which was the payment, at that time, of $2500 in cash and an agreement to furnish $1000 more, represented by a due bill for that sum given to the mortgagor by the mortgagee, which was cashed by the mortgagor within sixty days thereafter. In the present case, as in the *Beach* case, the mortgagee at the time he received the note and mortgage had given full consideration therefor. He had furnished in cash and services $1700 and bound himself by an enforceable agreement to furnish the balance of the amount—$1800—for which the mortgage was given, and six days thereafter this balance was fully paid to the mortgagor. It was obviously intended to be, and in fact was, a cash transaction, and, as dis-

closed by the finding, a fair and honest one with no attempt made to show the contrary. Nor does it appear that Urbansky was in any way misled to his prejudice. To hold this note and mortgage invalid, would be unjust to the parties thereto and a violation of the spirit and purpose of the statute in question. The statute was intended to prevent injustice, not to perpetrate it. What was said of the note and mortgage in the *Beach* case applied with equal force in this: "The note described existed. It was given in a straightforward business way for an equivalent amount in money actually advanced or absolute obligation to pay incurred. . . . The whole transaction was regarded by the parties as a cash transaction, and there was no impropriety in law in their so regarding it, and, accordingly, making the mortgage note one for $3500 and so describing the mortgage debt in the mortgage itself."

There is no error.

In this opinion the other judges concurred.