In the Matter of AMERICAN METAL PRODUCTS CO., Inc., Bankrupt.

Arthur B. Weiss, Trustee-Appellant,

Walter E. Heller Co., Inc., Appellee.

No. 197, Docket 25529.

United States Court of Appeals Second Circuit.

Argued Feb. 10, 1960.

Decided April 1, 1960.

Saltman, Weiss & Connors, Bridgeport, Conn. (Margaret Connors Driscoll, Bridgeport, Conn., on the brief), for trustee-appellant.

Charles Weingarten, Bridgeport, Conn. (Ralph Lockwood, Bridgeport, Conn., on the brief), for appellee.

Before MOORE, Circuit Judge, and SMITH and HERLANDS, District Judges.

HERLANDS, District Judge.

The validity of a certain chattel mortgage under Connecticut law is the question presented on this appeal. This issue arises out of the Chapter XI, 11 U.S. C.A. § 701 et seq., bankruptcy proceedings, commenced on April 22, 1958, involving American Metal Products Co., Inc. (hereinafter "American").

Walter E. Heller Co., Inc. (hereinafter "Heller"), a factor who is the creditor herein, claims that $5,674.27, the balance of principal indisputably owing by American to Heller, is secured by a chattel mortgage held by Heller. By reclamation petition dated June 20, 1958 (amended July 8, 1958), Heller sought immediate possession of the articles of personal property covered by the chattel mortgage, or in lieu thereof payment of the amount due to Heller.

The chattel mortgage was attacked by American's trustee in bankruptcy as void under the controlling Connecticut statute. 1949 Rev.S.Conn., section 7279.

By order dated October 21, 1958, the referee in bankruptcy, declaring the mortgage invalid, denied the amended Heller reclamation petition. The United States District Court for the District of Connecticut, by order filed December 17, 1958 (opinion reported at 169 F.Supp. 215), reversed the referee's order and granted Heller's petition. This appeal is from the District Court's order.

The chattel mortgage and promissory note were recorded. The debt described in the mortgage and in the note was an unconditional debt of $40,000, to be repaid in thirty-six monthly instalments,

with interest. The mortgage purported to secure not only "sums, liabilities and indebtedness which may be or become owing under said Note and under this mortgage" but also sums, liabilities and indebtedness "which otherwise may now or hereafter be or become owing by the Mortgagor to the Mortgagee, \* \* \* however created, \* \* \* "

At the same time (June 14, 1955) that the mortgage and note were executed, American and Heller also entered into a separate and collateral written agreement which, however, was not recorded. This separate agreement was not specifically or identifiably referred to in the mortgage. The separate agreement provided (1) that the initial advance would be $15,000; (2) that further advances would be made in instalments upon request of American, provided American was not then in default under the mortgage or under any other agreement by and between American and Heller; but (3) that $2,500 of the additional $25,000 to be advanced would be withheld unless and until American obtained satisfactions of certain prior recorded mortgages. There is no suggestion that the separate unrecorded written agreement was entered with fraudulent motive.

Actually, a total of $40,000 was advanced by Heller to American over a period of time. Because of American's repayments, however, the largest amount of indebtedness outstanding at any one time was just under $37,000.

■ Such a debt is legal and, if accurately described therein, presumably could have been secured by a chattel mortgage under the statute. Cf. Lampson Lumber Co., Inc. v. Chiarelli, 1924, 100 Conn. 301, 123 A. 909, 912 [real estate mortgage].

But the recorded chattel mortgage herein did not accurately describe the debt. Cf. Andrews v. Connecticut Properties, Inc., 1950, 137 Conn. 170, 75 A.2d

402, 404 [real estate mortgage]. Both the Referee and the District Court in the case at bar agreed that the chattel mortgage record "did not give reasonable notice of the nature and amount of the debt" (169 F.Supp. at page 218).

The Referee held that the material variance between the mortgage debt as described in the mortgage and as actually agreed to invalidated the mortgage in its entirety, and left the creditor unsecured. Reversing, the District Court held that the mortgage was invalidated only with regard to the amount overstated, i. e., the amount over the $15,000 initially and unconditionally loaned. Since the debt had been reduced to $5,674.27, and, by the normal rule, prior payments are to be applied first to the unsecured portion of a debt, the District Court held that the creditor was fully secured for $5,674.27, the principal amount of the debt still outstanding.

1949 Rev.S.Conn., 7279, entitled "Certain chattel mortgages void. Penalty" [1] provides:

"Any person who shall loan money upon a note secured by mortgage upon personal property, in which the sum of money loaned is stated to be greater than the amount actually loaned, or in which the rate of interest to be charged is greater than the rate allowed by law to be charged by pawnbrokers, shall be fined not more than fifty dollars or imprisoned not more than three months or both; and the mortgage and note secured thereby shall be void."

In the recorded mortgage before us (to quote the statute) "the sum of money loaned is stated to be greater than the amount actually loaned." Cf. Sadd v. Heim, 1956, 143 Conn. 582, 124 A.2d 522 [real estate mortgage]. A person consulting the recorded mortgage, for whose protection the recording system

---

1. 1949 Rev.S.Conn., § 7279 appears as revised at 1958 G.S.Conn., § 49–107. 1958 G.S.Conn., §§ 49–93 through 49–115, Chattel Mortgages, has been repealed, effective October 1, 1961. 1959,

Public Acts 133, Section 10–102. It is replaced by the Uniform Commercial Code. See 1959 Supplement to the General Statutes, Title 42a Article 9.

was set up and is maintained, would have obtained the false information that the personal property involved was encumbered to the extent of $40,000, at least at the time of filing. He would have seen nothing to put him on reasonable notice that this was only one of several possibilities that depended upon a separate unrecorded written instrument. As noted, in point of fact, the initial encumbrance was only $15,000 and the property was never encumbered at any one time in an amount greater than $37,000.

■ The Connecticut cases emphasize the policy objective, that the statute (enacted in 1899) was intended "to insure the veracity and reliability" of the recording system. See, e. g., Mozwish v. Sirus, 1931, 113 Conn. 141, 154 A. 166, 167; Morin v. Newbury, 1906, 79 Conn. 338, 341, 65 A. 156.

■ The mortgage under consideration violated the plain language and the specific policy of the statute. It operated as a constructive fraud on the recording system. The consequence is illustrated by Whitney Frocks, Inc. v. Jaffe, 1951, 138 Conn. 428, 85 A.2d 242, where the Supreme Court of Errors affirmed the trial court's conclusion that the chattel mortgage was invalid in its entirety because only $900 had actually been loaned whereas the mortgage securing the loan stated the amount of the loan to be $1,200.

Those cases wherein the Supreme Court of Errors of Connecticut has refused to apply the statute are sharply distinguishable. In Morin v. Newbury, supra, Sinclair, Scott Company v. Miller, 1907, 80 Conn. 303, 68 A. 257 and Mozwish v. Sirus, supra, the Supreme Court of Errors found that the particular

transactions or the particular instruments involved were not of the kind which the statute was intended to regulate.[2]

In Weissman v. Volino, 1911, 84 Conn. 326, 329, 330, 80 A. 81, 82, an analogous real estate mortgage case, "the mortgage gave full notice * * * with reasonable certainty of the nature and amount of the incumbrance." The court upheld the validity of the mortgage for that reason, explicitly expressed.

■ Fraudulent motive or *mens rea* is not prerequisite to a finding of violation of the statute under consideration. It is concluded that the mortgage herein violated section 7279 and is invalid.

■ The next question is whether the priority of the initially advanced and unconditional portion of the loan ($15,000.)—which, in this case, includes the full amount of the debt still outstanding ($5,674.27)—may be sustained *pro tanto* by applying the equitable doctrine of Matz v. Arick, 1904, 76 Conn. 388, 56 A. 630. Matz holds that, in the absence of misrepresentation or fraud, the validly secured portion of a real estate mortgage debt will hold its priority against subsequent liens even though the balance of the mortgage debt is unsecured. It must be emphasized that Matz arose in the context of real estate mortgages. No authoritative Connecticut decision has applied Matz to a chattel mortgage.

In Connecticut, chattel mortgages with possession retained are, unlike real estate mortgages, creatures of statute. Rood v. Welch, 1859, 28 Conn. 157, 161; Safford v. McNeil, 1925, 102 Conn. 684, 129 A. 721, 722, 723. See 1958 G.S. Conn. §§ 49–93, 49–94, 49–95, for which there are no corresponding statutes re-

---

2. In Morin the security for the note was an instrument described as an absolute bill of sale, in ordinary form, without any condition. This was held to be not recordable because it was "neither in form nor name a mortgage" 79 Conn. at pages 339, 340, 65 A. at page 156.

In Sinclair, Scott Company, there was an affirmance of a lower court ruling that "a note and mortgage of the kind described were not invalidated by the stat-

ute." It was held that the facts were "precisely analogous to those presented in Morin v. Newbury" because the statute applied only to "chattel mortgage of our statutes" 80 Conn. at pages 304, 305, 68 A. at page 257.

In Mozwish, the court regarded the arrangement as a cash transaction in which "the mortgagee at the time he received the note and mortgage had given full consideration therefor" 154 A. at page 167.

lating to real estate mortgages. Nor is there a statutory equivalent of section 7279 relating to real estate mortgages.

The analogous legal principles with regard to real estate mortgages are judge-made. That body of law may properly be developed by the judicial application of equitable doctrines. In the field of chattel mortgages, however, the Connecticut Legislature has spoken clearly by statute. A Federal court may not deflect or defeat the force of that enactment by applying an equitable doctrine, where the statute does not leave room for interstitial judicial legislation.

In Whitney Frocks, Inc. v. Jaffe, supra, where the Supreme Court of Errors upheld the voiding of the entire mortgage, that court did not even advert to the possibility of adopting the Matz doctrine. Had that doctrine been applied, two-thirds of the debt stated would have been validly subject to the mortgage lien.

Application of the Matz doctrine to this case and to most cases of chattel mortgages would virtually nullify section 7279. One who overstates the amount of the loan in a recorded chattel mortgage would lose nothing but the amount of the overstatement, to which he frequently may not be entitled. Were the Matz doctrine applied, for the statute to operate at all, fraud or intentional misrepresentation would be engrafted upon the statute as an added necessary element of proof. The recording system and its intended beneficiaries would lose the statute's protection against inept, uninformed or careless mortgagees, honest though they may be. Had the Connecticut Legislature so intended, an appropriate provision would probably have been adopted in 1899 or in the many years that the statute has been operating and the subject of interpretative litigation.

The Supreme Court of Errors refused to import an equitable doctrine from real estate into chattel mortgages in Safford v. McNeil, supra. It there held that the doctrine of equitable liens—which gives the mortgagee a lien on real estate although his mortgage is defectively executed—has no application to chattel mortgages. The court's decision is grounded on the proposition that chattel mortgages are creatures of a statutory exception to the common law, and the statute must be closely followed.

It is, therefore, concluded that the Matz doctrine cannot be applied to the case at bar. The chattel mortgage is invalid in its entirety. It is not necessary to determine whether the mortgage complies with the requirements of 1949 Rev.S.Conn. § 7265 (1958 G.S.Conn. § 49–93) or whether it is void for indefiniteness under that section.

The unreported opinion in In the Matter of the Nord Manufacturing Company, Inc., Bankruptcy Case No. 22749 (U.S.D.C.D.Conn. May 21, 1948) was written prior to the 1951 decision of Whitney Frocks, Inc. v. Jaffe, supra, which is the authoritative expression of Connecticut law. To the extent that the interpretation of Connecticut law in Nord is inconsistent with the views expressed herein, it is disapproved.

The decision of the District Court is reversed.