**In the Matter of Burton CARROLL, Jr.**
**No. H–3312.**

United States District Court
D. Connecticut.
June 30, 1964.

Samuel Steinberg, Hartford, Conn., for bankrupt.

Donald Lee Rome, Hartford, Conn., for petitioner.

Harvey Hoberman, Hartford, Conn., for trustee and objectant.

BLUMENFELD, District Judge.

This is a petition to review the referee in bankruptcy's disallowance of petitioner's claim on the ground that it is unenforceable under Connecticut law. The referee's findings are not questioned, only his interpretation of Connecticut law.

The relevant facts, as found by the referee, are as follows. Petitioner filed a secured claim in the amount of $8,631.-44, the basis of which is a note, payable to the petitioner, for $9,000, interest at the rate of 12% per annum, and a mortgage on real property located at 386 West Mountain Road, Simsbury, Connecticut. The note was executed in exchange for $6,000 on June 7, 1961, by Burton Carroll, the bankrupt, by Margaret L. Benson, his mother, and by B. Carroll Construction Company, a corporation controlled by the bankrupt. The note provided for 6 monthly payments of $100 and 59 monthly payments of $165, the balance to be paid 6½ years from the date of execution. It recited that it was

> "secured by a mortgage of even date on #386 West Mountain Road, Simsbury, Connecticut [owned by the bankrupt], #388 West Mountain Road, Simsbury, Connecticut [owned by Margaret L. Benson], and chattel mortgage on a truck mounted power shovel [owned by B. Carroll Construction Company]."

The mortgage deed was signed by the bankrupt and Margaret L. Benson. No formal chattel mortgage was executed by B. Carroll Construction Company. However, in February 1962 when B. Carroll Construction Company had an opportu-

nity to sell the power shovel for $700, petitioner agreed to release the power shovel if two delinquent installments on the note were paid.

■ With respect to the referee's conclusion that under Connecticut law the loan is usurious and that the entire principal and interest is forfeited, see Conn. Gen.Stats. §§ 37-4, 37-5, 37-6 (1958), petitioner concedes that the only issue is whether his claim, otherwise unenforceable, comes within the terms of Conn. Gen.Stats. § 37-9 (1958), which provides in part:

> "The provisions of sections 37-4, 37-5 and 37-6 shall not affect * * any bona fide mortgage of real property for a sum in excess of five thousand dollars."

There is no question that on the basis of the referee's findings the mortgage is "for a sum in excess of five thousand dollars," for it secures an actual loan of $6,000. Beck v. Brockett, 145 Conn. 465, 144 A.2d 63 (1958); Kruzansky v. Scombul, 113 Conn. 569, 155 A. 836 (1931). The dispute is as to whether or not the mortgage is a "bona fide mortgage of real property."

■ The referee held that because of the inclusion of chattel security for the loan, the mortgage is not a "bona fide mortgage of real property," emphasizing the word "real." Referee's Memorandum at p. 11 (reported in 38 Conn.B.J. 349 (1964)). The court does not agree with this conclusion. The loan was originally secured by a mortgage on real property and by an arrangement with respect to personal property.[1] The situation is distinguishable from that in M. Lowenstein & Sons v. British-American Mfg. Co., D.C., 300 F. 853 (D.Conn.1924), aff'd, 7 F.2d 51 (2d Cir. 1925), where the same mortgage deed covered both real and personal property; here the mortgage deed includes only real property. The referee, apparently because both security interests arose out of the same transaction, considered them together as one

security arrangement which was something other than a mortgage on real property. This approach, in effect, requires that in order to be within § 37-9 a "bona fide mortgage of real property for a sum in excess of five thousand dollars" must be the *only* security given for the debt or, if it is not, the other security must qualify under § 37-9 also. It introduces a qualification on the applicability of § 37-9 which is not inferable from its language or its purpose. See Atlas Realty Corp. v. House, 120 Conn. 661, 183 A. 9 (1936).

■ The trustee offers an alternative ground for holding the exception provided by § 37-9 inapplicable. He contends that because of the large bonus, the inclusion of chattel security in the loan transaction, and "the [petitioner's] lack of concern as to the security or priority of the * * * mortgage instrument," the mortgage is not "bona fide." Only the first and second of these circumstances are discoverable in the referee's findings. As to those, standing alone, they do not constitute "circumstances of fraud, deception upon the mortgagor, or bad faith toward him;" nor do they indicate that the mortgage was not "real, actual, genuine * * * and not feigned." Bridgeport Mortgage & Realty Corp. v. Whitlock, 128 Conn. 57, 60, 61, 20 A.2d 414, 416 (1941). Compare In re Lico Mfg. Co., 201 F.Supp. 899 (D. Conn.1961), aff'd per curiam sub nom., Cohn v. Lico Mfg. Co., 323 F.2d 871 (2d Cir. 1963). The trustee's contention that the mortgage is not bona fide is, therefore, without merit.

■ The referee's second ground for disallowing the claim is Conn.Gen.Stats. § 49-107 (1958) (since repealed by P.A. 133, § 10-102 (1959) effective October 1, 1961), which provides:

> "Any person who loans money upon a note secured by mortgage upon *personal property,* in which the total debt including interest or finance charges is stated to be greater than such total debt, or in which the rate

---

1. The court finds it unnecessary to consider whether or not there was at any time an enforceable chattel mortgage between the parties.

of interest to be charged is greater than the rate allowed by law to be charged by pawnbrokers, shall be fined not more than fifty dollars or imprisoned not more than three months or both; and the mortgage and note secured thereby shall be void." (Emphasis added.)

The cases cited to the court by petitioner clearly refute the referee's position. In Morin v. Newbury, 79 Conn. 338, 65 A. 156 (1906), a bill of sale of personal property, absolute on its face, was given to secure a note which overstated the amount of the debt. The court there noted that the bill of sale might in equity be given the effect of a mortgage, but held § 49–107 inapplicable, reasoning that since the primary purpose of the statute is to ensure the veracity of the recording system, only instruments

"which the law requires to be publicly promulgated by recording, and to which, when recorded, the law attaches a peculiar importance and accords a peculiar protection, * * * are within the spirit and fair import of the language of the statute * *." (79 Conn. at 341–342, 65 A. at 157)

This construction of the statute was shortly thereafter considered and reaffirmed by the Supreme Court of Errors in Sinclair, Scott Co. v. Miller, 80 Conn. 303, 68 A. 257 (1907).

More recently, the Court of Common Pleas had occasion to consider Morin v. Newbury in New Bedford Acceptance Corp. v. Universal Auto Co., 1 Conn.Supp. 160 (C.P.1935). It pointed out that the Supreme Court of Errors had been influenced by the fact that the Connecticut usury law, as it then stood, did not require the usurer to forfeit the entire amount of his loan, but denied him the right to recover on his contract only to the extent that it was illegal: to construe § 49–107 as having been enacted to protect the borrower would have exacted

without reason a greater penalty from the usurer who accepts a chattel mortgage than from one who does not; thus the purpose of the statute was held to be the protection of the public records and its application was limited to transactions in which "the chattel mortgage of our statutes" was given as security. Sinclair, Scott Co. v. Miller, supra, 80 Conn. at 305, 68 A. at 257. The Court of Common Pleas suggested, however, that the foundation of Morin v. Newbury has been weakened by subsequent legislation, see Conn.Gen.Stats. §§ 37–4 et seq. (1958), providing that the usurer must forfeit the entire amount of the loan. On the contrary, the support for a narrow construction of § 49–107 has been increased by that legislation. Now there is no necessity for broadly construing § 49–107 in order to protect the borrower or penalize the usurer, for these policies are served by specific legislation of which § 37–9, already considered, is part. Furthermore, although application of § 49–107 to this case would not result in the exaction of a greater penalty from the alleged usurer than would be exacted if he had not taken chattel security,[2] it is still difficult to believe that the legislature intended to demand, under penalty of forfeiture, fine and imprisonment, the same exactitude of description in an unrecordable document as in a recordable one.

Here a formal chattel mortgage was not executed and none is sought to be enforced; there was nothing to threaten the reliability of the system for recording interests in personal property. Section 49–107 is inapplicable.

The referee's disallowance of petitioner's claim on the grounds stated was erroneous. The case is remanded to the referee for determination consistent with Conn.Gen.Stats. § 37–9 (1958), of the amount of the secured claim, if any, to which petitioner is entitled.

2. In fact, it would be less. Compare Conn. Gen.Stats. § 49–107 (1958) (since repealed by P.A.133, § 10–102 (1959), effective October 1, 1961) with Conn.Gen. Stats. § 37–7 (1958).