[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action has been brought by the plaintiff claiming foreclosure of a construction mortgage it issued the defendant, James Galliot Builders, Inc. in the amount of $165,000,
FACTS FOUND
By deed dated September 14, 1987, the Defendant, James Galliot Builders, Inc. (hereinafter, Galliot) acquired title to a certain parcel of unimproved land known as Lot No. 45 CT Page 400 Mile Hill Road, Tolland Connecticut (the "premises") for the sum of $75,000.00. The purchase money was provided to Galliot by the Defendant, Eugene Pugliese (hereinafter, Pugliese), in the form of a loan evidenced by a promissory note in the principal amount of $100,000.00, which notes was secured by a mortgage deed to the premises dated September 14, 1987, and recorded September 16, 1987 in Volume 315 at Page 294 of the land records. This mortgage contained a clause pursuant to which it would be automatically subordinated to a construction mortgage in the principal amount of $150,000.00
Pugliese explained that the $25,000.00 difference between the purchase price and the mortgage amount was for the purpose of funding improvements on the property. Pugliese was an experienced real estate businessman who had previously had similar dealings with Galliot. In addition to the repayment of the mortgage loan, Pugliese expected to share in the proceeds from the ultimate sale of the improved premises.
On December 11, 1987, Galliot entered into a construction loan agreement with the Plaintiff pursuant to which the Plaintiff agreed to advance up to $165,000.00 to Galliot for the construction of improvements on the premises. This agreement was evidenced by Galliot's promissory note to the Plaintiff, which note was secured by a mortgage deed to the premises dated December 11, 1987 and recorded December 15, 1987 in Volume 322 at Page 301 of the land records. At this time, Pugliese executed and delivered to the Plaintiff a mortgage subordination agreement, thereby effectively subordinating the Pugliese purchase money mortgage to the lien of the Plaintiff's construction mortgage. The subordination agreement was dated December 11, 1987 and recorded December 15, 1987 in Volume 322 at Page 308 of the land records.
The Plaintiff's mortgage deed and note provided for the Plaintiff to advance funds in installments as the construction work progressed, the time and amount of each advance to be at the sole discretion and upon the estimation of the Plaintiff. During the period between December 11, 1987 and November 29, 1988, the Plaintiff made a number of periodic advances under the construction loan, each time reviewing the progress of the construction by way of on-site inspections and interviews with the builder. With the advance of November 29, 1988, the Plaintiff had disbursed to Galliot the full $165,000.00 authorized.
Pugliese had anticipated that $25,000.00 of his purchase money loan would be used for construction. He testified that CT Page 401 Galliot may not have used the funds for that purpose. There was no evidence as to how much additional capital Galliot was required to contribute towards construction costs, if any. Ultimately, Galliot abandoned the project, and at time of trial the construction had not been finished.
Accordingly the Ernest Gilmour, Jr., the plaintiff's appraiser, the house is 70% to 75% complete. He estimated the value in its incomplete state as of November 19, 1990 was $171,600. Neither Mr. Gilmour nor any other witness testified about the cost of completing the premises.
Galliot defaulted on the Plaintiff's note by failing to pay an installment of interest due January 1, 1989, and consequently the plaintiff accelerated the indebtedness and commenced this present foreclosure action. Pugliese is a Defendant by reason of the subordinated status of his purchase money mortgage. By his Answer and Special Defenses, Pugliese disputes the priority of the Plaintiff's mortgage. Pugliese alleges that his subordination Agreement was given in reliance on ". . .express conditions, covenants and agreements. . ." contained in the Plaintiff's mortgage. Pugliese contends that the Plaintiff breached these conditions, covenants and agreements, and consequently waived, or is estopped from claiming, the priority of its mortgage. These arguments also form the basis of Pugliese's counterclaims. Finally, he asserts violations of Connecticut Unfair Trade Practices Act, General Statutes Sec. 42-110a et seq.
OPINION
At trial, Pugliese admitted that he had never read the Plaintiff's mortgage documents nor received any oral representations from the Plaintiff. Hence, the allegation that he relied thereon was, at best, a misstatement. In his testimony, Pugliese stated that what he, in fact, meant, was that he was relying upon Section 49-3 of the Connecticut Statutes. He believed that same regulated the disbursement of construction mortgage proceeds. The plaintiff addresses this claim by noting that Pugliese failed to comply with Section 109A of the Practice Act.[1] In any event, the court does not understand Pugliese's claim that the law "demonstrate[s] the legislature's intent in this State, to closely scrutinize progress payments made in advance of work to be performed secured by construction mortgages, and to protect subsequent encumbrances in this regard." This court finds that Section 49-3 has no bearing on his claims. In fact, there is no dispute that the open-end construction mortgage deed complied with the statute. CT Page 402
Defendant, Pugliese, contends that because the plaintiff failed to inspect the property and/or failed to obtain lien waivers prior to making certain advances to Galliot and because it did not make the disbursements to Galliot in strict accordance with its general policy of when such payments are ordinarily made, to that extent, the priority of plaintiff's lien ought to be reduced. Pugliese cites Stein v. Davidson, 110 Conn. 3 (1929) as authority. Stein is readily distinguishable from the case at bar.
On the facts, Stein is distinguishable for the reason that the construction mortgage documents at issue in that case contained a specific schedule of advances based upon the stages of completion of the work. Such specificity was required of construction mortgage loans at that time. See Stein v. Davidson, supra, at Page 8; Morwish v. Sirus,113 Conn. 141 at 144 (1931). By reason of the specified schedule of advances, subsequent encumbrancers would be able to determine the amount of the secured indebtedness at any particular stage of construction. Thus, in Stein, the subsequent owner of the mortgaged property could successfully challenge the amount of the alleged mortgage debt on the grounds that the work had not progressed to the stage at which a particularly scheduled advance was to have been properly disbursed.
The mortgage deed and note in the present case contained no such schedule of advances, none being necessary as a result of the enactment of Connecticut General Statutes Sec.49-3 in 1949. Instead, the instant mortgage duly warned anyone subsequently interested in the property that the amount of the loan would be advanced in installments, ". . .the time and amount of each advancement to be at the sole discretion and upon the estimate of the grantee. . ."
Even if Stein were the law of this case, even if General Statutes Sec. 49-3 did not provide statutory "safe harbor" for the Plaintiff's mortgage, the Defendant Pugliese could not prevail on his claim. This is so because, unlike the subsequent purchaser in Stein, who had relied upon the schedule of advances contained in the mortgage deed and note, and upon his inquiry into the status of the construction at the time that he acquired property, Eugene Pugliese relied on nothing said or done by the Plaintiff, nor contained in the Plaintiff's mortgage note and deed, at the time that he unconditionally subordinated his purchase money mortgage.
Pugliese may not now validly complain that advancements were made contrary to his private expections. CT Page 403
"In the present case, there is no claim of collusion made against the plaintiff. . . .In the absence of such collusion, or an express agreement, the mortgagee given priority is under no obligation to see that money it advances are employed by the borrower in the manner contemplated by the subordinated purchase money mortgage." Levesque v. D M Builders, Inc., 170 Conn. 168, 176-177 (1976).
Consequently, a judgment of strict foreclosure may enter in favor of the plaintiff. The court finds that there is due the plaintiff the sum of $165,000.00 principal, plus interest of $44,929.56 through December 18, 1990, plus late charges of $420.50. The Court finds as proven that the per diem is $59.58. The Court awards $4,500.00 as a reasonable attorney's fee and $600.00 as a reasonable appraisal fee, including in-court testimony. The Court finds that the fair market value of the property is $171,600.00.
The law day is set for March 14, 1991, for the owner of the equity of redemption, and subsequent days for subsequent encumbrancers in the inverse order of their priorities.
SCHEINBLUM, J.